ROBERT H. MOORE et al. complainants-appellants,

*v.*

SPLITDORF ELECTRICAL COMPANY, a corporation, defendant-respondent.

[Submitted May 26th, 1933.   Decided October 16th, 1933.]

*Messrs. Minturn & Weinberger,* for the complainants-appellants.

*Messrs. McCarter & English,* for the defendant-respondent.

The opinion of the court was delivered by

PERSKIE, J.

This appeal brings up for review two orders, (1) August 15th, 1932; (2) September 13th, 1932, made by Vice-Chancellor Bigelow in the course of the proposed reorganization of the respondent company. The uncontradicted facts fully appear in the report of the special master and in the memorandum filed by the vice-chancellor. The twenty-five grounds of appeal urged as constituting reversible error are condensed and argued under four points. They are in the following form:

1. The court erred in denying the appointment of a receiver in accordance with the prayer of the bill.

2. The court erred in continuing the existing officers and liquidating trustees.

3. The plan presented is not a fair and equitable one to creditors or owners of the debentures and is prejudicial to their interests.

4. The order that the complainants pay counsel fee and master's fee is illegal and unwarranted.

Points 1 and 2 are directed at the first order. We pass over these objections for we think they are without merit.

The appointment of a receiver is not a matter of absolute legal right. It is a discretionary power. Sound discretion should be exercised by the court before any such appointment is made. The following are typical of the many cases so holding: *New Foundland Railroad Construction Co.* v. *Schack, 40 N. J. Eq. 222; Kelly* v. *Kelly-Springfield Tire Co., 106 N. J. Eq. 545; Shonnard* v. *Elevator Supplies Co., Inc., 111 N. J. Eq. 94.* There was no abuse of this sound discretion. We desire to make further observation that complainants offered no proof in this case. We, therefore, likewise pass over the further objections contained within the points aforesaid to this order which question the propriety of the court's permitting the directors of the respondent company to act as its trustees in liquidation. Notwithstanding that practically all the directors of the new company were the same as those of the old company and represented both buyer and seller (*Shanley* v. *Fidelity Union Trust Co., 108 N. J. Eq. 564*) the proof was plenary and justified the finding that the price for the sale of a large part of the assets of the old company to the new company was a fair price.

This brings us to the third point. Under this contention we believe there is presented the primary question involved on this appeal. That question is, whether in pursuance to a plan of reorganization which involved the sale of a large part of the assets of an insolvent company to a new company whose directors are practically the same as those of the insolvent company, but which sale upon inquiry was found to be fair and the plan of reorganization to the interest of both creditors and stockholders, a minority holder of debenture bonds of the admittedly insolvent corporation may be compelled against his will to surrender his debenture bonds and accept in lieu.

thereof stock in the new company without first being afforded the alternative of receiving his proportionate share of the proceeds of a conventional sale of all the property of the old company?

The plan, *inter alia,* contemplated that Edison-Splitdorf Corporation (the new company) would issue or cause to be transferred its corporate stock which consists of one class of common stock without par value, to the debenture holders and stockholders of Splitdorf Electrical Company (the old company) as follows:

(a) Each holder of $100 par value of debentures would receive two shares of the common stock of Edison-Splitdorf Corporation, and in addition thereto, the right to purchase for cash five shares of the said common stock at $5 per share.

(b) Each holder of twenty shares of common stock would receive one share of the common stock of the Edison-Splitdorf Corporation, and in addition thereto, the right to purchase for cash three shares of the said common stock at $5 per share. Provision was also made for fractional warrants for stock, &c.

Notwithstanding the conclusions of Vice-Chancellor Bigelow, in which among other things he held: "The vice of the plan lies in the undue preference given stockholders," and that he would be compelled under the cases (*Keen* v. *Maple Shade Land and Improvement Co., 63 N. J. Eq. 321; Trustees of Sea Isle Realty Co.* v. *First National Bank of Ocean City, 87 N. J. Eq. 84*), to enjoin the sale were complaint made by any creditor (the intervening complainants being stockholders only) who could be injured by it, nevertheless, he was not unmindful of the troublesome question presented, for he further held: "Complainants further contend that they cannot be compelled against their will to become stockholders in the new company and that they are entitled, whatever may be their interest in the assets of the defendant, to be paid the value of that interest in lawful money. Their position seems to me to be sound, but it does not necessarily follow that the sale should be enjoined." The vice-chancellor proceeds to answer the contention made and says: "Over eighty per cent. of the debenture holders and a great majority of the

stockholders have approved the plan under consideration and are willing to accept their allotment of stock in the new company. No reason appears why they should be deprived of the benefits which they anticipate. The equity of complainants can be fully preserved by a modification of the plan whereby the stock applicable to them and which they are unwilling to take, will be issued by the new company to the trustees in dissolution. The trustees will then sell this stock for the best price they may obtain and pay the proceeds to complainant." The plan was ordered modified accordingly. Did the order so modified meet or cure the evil complained of? We think not. The gravamen of the complaint of the minority debenture holder lies not in the fact that he cannot obtain some cash for his stock in the new company, which incidentally, included only part of the assets of the old company, but rather in that he was entitled as a matter of right, under the law, to the alternative of receiving his proportionate share of the proceeds of a conventional sale of all of the property of the old company.

We, therefore, approach the pertinent inquiry—does the order confirming the plan of reorganization deprive the complainant of his rights in the premises?

In *Lonsdale Securities Corp.* v. *International Mercantile Marine Co., 101 N. J. Eq. 554*, Vice-Chancellor Bentley decided that, when the rights of preferred stockholders to share in a surplus fund to the exclusion of the common stockholders have become vested, equity will not permit majority stockholders to deprive non-consenting preferred stockholders of their vested rights in said surplus fund. He says (at *p. 559*):

"It has been urged that a proper spirit would cause these complainants to relinquish their strict legal rights in the common interest of the corporation and the other stockholders. Such an argument might well be addressed to the complainants by their fellow stockholders, but cannot be adopted by the court. It is trite to say that one may be generous with his own property, but it is scarcely generosity to deal lavishly with that of another. The fourth section of the existing cer-

tificate of incorporation of the defendant creates a contract between the defendant and the complainants by which the latter are clothed with certain property rights having a fixed, determinate value. In place of those rights it is intended to substitute others of a less valuable character over the objection of the complainants. That they do object is conclusively shown by the filing of these bills. It is true that there would be placed in the hands of the owners of the new shares of stock issued to replace the preferred shares intended to be retired, a greatly increased power of franchise, but the complainants neither seek, nor wish, to surrender their present rights for the one offered in their stead, and it is beyond the power of the corporation, this court or the legislature to compel it."

And again on page 560 of the same case, he further says:

"Not only would the change result in an injury to the future, as well as the past, dividend rights of the preferred stockholders, but it would also interfere with and materially diminish or abolish vested rights."

The case of *Outwater* v. *Public Service Corp., 103 N. J. Eq. 461; affirmed, 104 N. J. Eq. 490,* sheds some illuminating light on the rights of stockholders. In that case, Vice-Chancellor Backes (at *p. 465*), stated:

"The complainants' resistance and their contention that they ought not to be compelled to exchange their first lien securities for gilt edged second line security, is not without appeal, and were the decision to rest here there would be some embarrassment in squaring the merger with fairness. But there is a more serious inequity—the preferred stock lacks permanency. It is redeemable within three years at the option of the Electric and Gas Company. Thus the merger, in effect, is nothing less than a forced sale by the majority stockholders to itself at a price fixed by it and payable at its pleasure. The preferred stock is but the equivalent of a six per cent. promissory note payable in three years at the option of the buyer. The merger legislation countenances no such perversion of the contractual obligations of stockholders *inter sese.* Continued membership, until dissolution, is an inherent prop-

erty right in corporate existence. A merger is but fusion of corporate assets and franchises and an allocation of stock in the merged company, and works a conversion not a destruction of that right. In the ordinary case of merging going concerns and the conversion of share for share upon parity of value, all rights, including voting rights, are reserved to the stockholders."

Again on page 468, he further says:

"* * * The complainants' companies are about to be absorbed and the minority stockholders face the possibility, if not the probability of being cast into the discard. This, by right of might and by means unwarranted and oppressive, and their only appeal for relief is to this court. The merger will be enjoined."

A very recent and interesting case on the subject is that of *Coriell* v. *Morris White, Inc., 54 Fed. Rep. (2d) 255,* decided by the circuit court of appeals for the second circuit. (This case was reversed by the supreme court of the United States in an opinion by Mr. Justice Brandeis, May 22d, 1933, volume 77, No. 14, 1932, term, page 865. The reversal, however, was based on the fact that the district court had not taken proof before it declared the plan of reorganization fair. The supreme court specifically stated that by reason of this error on the part of the district court, it became unnecessary to pass on the points decided by the circuit court.) In that case the circuit court of appeals held:

"The question presented to us is whether these minority creditors are obliged to accept the plan, taking stock and notes in place of cash, and be contented to wait the outcome of this new venture in the hope that some day the preferred stock will be redeemed and payment of their notes made. Have the appellants been deprived of their rights as creditors by this order?

"Assets of an insolvent commercial corporation have long been recognized as a trust fund for the payment of its creditors. It has likewise long been recognized that contract obligations may not be impaired by the courts. *Muhlker* v. *New York and Harlem Railroad, 197 U. S. 544; 25 Sup. Ct.*

*522; 49 L. Ed. 872.* Private property may not be taken in violation of contract obligations. A creditor may not be compelled to accept, in payment of his claim against a private corporation, paper which is not legal tender of the United States. *Constitution of the United States, art. 1 ¶ 10.* Any other tender is not a valid tender. *Farmers' and Merchants' Bank* v. *Federal Reserve Bank, 262 U. S. 649; 43 Sup. Ct. 67 L. Ed. 1157; 30 A. L. R. 635.* If the order appealed from does not pay the debts of the corporation to the extent of its financial ability to pay, it wipes out the contract obligations by which credit was extended to the corporation. The court has not the power to direct a creditor to accept stocks of a private corporation in payment of its commercial obligation. The assets of the corporation may not be used as a fund for the benefit of the debtor rather than a creditor. Commercial obligations, such as an extension of credit, must be imposed by the contracts of the parties with the legal obligations flowing therefrom. It must be left to the decision of the creditor whether he will accept a new form of security in payment of his debt, and thus embark upon a new venture, or insist upon the rights which are his because of the contract which he entered into and by which he extended credit.

"* * * But the instant case does not involve the powers of a judge sitting in equity merely to pass on the fairness of a plan or reorganization in a case where there has been a public sale or other provisions for payment to creditors who object to the plan of the liquidation of the fair value of their claims in cash. In reorganizations the courts have refused approval of plans of reorganization where cash payment is not offered. *Geddes* v. *Anaconda Mining Co., 254 U. S. 590; 41 Sup. Ct. 209; 65 L. Ed. 425; In re Northampton Portland Cement Co. (D. C.), 185 Fed. Rep. 542; In re Sale of Assets of First National Bank of Florence (D. C.), 6 Fed. Rep. (2d) 905; In re J. B. & J. M. Cornell Co. (D. C.), 186 Fed. Rep. 859; In re J. B. & J. M. Cornell Co. (D. C.), 201 Fed. Rep. 38; In re Prudential Outfitting Co. (D. C.), 250 Fed. Rep. 504.* In such cases, the courts should not require the creditor in a reorganization plan to accept, over his objections,

stocks or notes in lieu of this claim for cash, even though there may be prospects of payment from the new and willing debtor. *Harding* v. *American Tobacco Co.* (*D. C.*), *14 Fed. Rep.* (*2d*) *168*.

"The compelling motive in an equity receivership is to save the business. Where a corporation is faced with financial difficulties which seem but temporary, and require careful handling with promise of success in reorganization, it has long been the practice of a court of equity to lend a helping hand, having in mind that at the end of the receivership there shall be a reconstructed and saved business. But such good motive may not deprive a creditor of the rights created under the direct obligation resulting in the indebtedness. As Mr. Justice Brewer said in *Merchants' Loan and Trust Co.* v. *Chicago Railways Co.* (*C. C. A.*), *158 Fed. Rep. 923, 927:* 'A party insisting upon those rights is probably, or even certainly bound to suffer loss, yet while he insists it (the court) must protect him in his insistence. There is no wide discretion vested in the chancellor which permits him to disturb contract rights—rights of property.' *Kneeland* v. *American Loan Co., 136 U. S. 89; 10 Sup. Ct. 950; 34 L. Ed. 379; Gay* v. *Hudson Electric Co.* (*C. C. A.*), *184 Fed. Rep. 689; Odell* v. *Batterman* (*C. C. A.*), *223 Fed. Rep. 292.*

"* * * We are unable to find authority for the claim of the appellees that the court has power to compel a creditor of any kind to accept stocks or promises to pay in the future in full extinguishment of his claim, without being afforded the alternative of receiving his proportionate share of the proceeds of the conventional sale of the property in cash."

In the foregoing case the relief was sought by a creditor whereas in the instant case the relief sought is confined to a minority debenture holder. Is there any difference between a creditor and a debenture holder? Who is a creditor? *15 Corp. Jur. 1370, 1371,* says: "In general the term creditor commonly signifies one who holds some contractual obligation against another, and is ordinarily used as the antonym or correlative of 'debtor' * * *. The word is susceptible of latitudinous construction." Webster's explanation of the

word is: "Person to whom a sum of money or other thing is due by obligation, promise or in law." Bouvier's Law Dictionary (Rawle's third revision), page 726, gives the following definition: "He who has a right to require the fulfillment of an obligation or contract." The same author quotes the definition adopted by Chief-Justice Beasley in the case of *New Jersey Insurance Co.* v. *Meeker, 37 N. J. Law 282* (at *p. 300*): "A person to whom any obligation is due." The chief-justice elaborated on this definition and held, on the same page of the same case: "The term creditor does not mean simply a person to whom a debt is due—that is but its usual meaning, but it further denotes a person to whom any obligation is due." "And this is the real meaning." "Preferred creditors are those who, in consequence of some provision of the law, are entitled to some special privilege in the order in which their claims are to be paid." Bouvier's Law Dictionary, page 726.

That a bond holder is a creditor is not questioned by the authorities. *Baker* v. *Guarantee Trust and Safe Deposit Co., 31 Atl. Rep. 174,* in which case a bondholder's right to file a claim as a creditor against the corporation with the receiver is discussed. See, also, the recent case of *City Hall Building and Loan Association* v. *Star Corp., 110 N. J. Law 570.*

The complainant, a holder of a debenture bond of the old company, was a creditor, a secured creditor, of that company. As such creditor there was created between the company and himself a definite and fixed relationship. This is particularly so as to the security for his debenture bond. It seems to us that it must rest entirely with such creditor as to whether he is willing to accept a new form of security for the payment of his debenture bond. The very least to which he is entitled is the alternative of receiving the proportionate cash share of his holdings on a conventional sale of all the assets of the old company.

The evil or wrong of the second order is that it empowers the majority of the debenture holders, by sheer might, to destroy the fixed and established rights of the minority de-

benture holders. It is not a question of might—it is a matter of right.

As to the fourth point, the vice-chancellor very properly concluded that the proposed plan, offer, &c., should be submitted to an inquiry. As a result of that inquiry he modified the plan in the manner hereinabove indicated. It therefore seems to us that the fees and costs of the proceedings should not have been placed on the complainants.

In the case of *Beall* v. *New York and New Jersey Water Co.*, *87 N. J. Eq. 390*, Chancellor Walker stated the following:

"Now as to the question of costs: It has already been observed that each of the parties, complainants and defendants, have succeeded in part, and I should add, that both sides have succeeded on substantial issues.

"In *Diocese of Trenton* v. *Toman*, *70 Atl. Rep. 881*, I held when vice-chancellor, that under the Chancery act (*P. L. 1902 p. 540 ¶ 91*), the allowance of counsel fee to complainant was discretionary. That section was amended in 1910 (*P. L. 1910 p. 427*) but in no way which is important with reference to the case now before me. The allowance of counsel fee to one party against another in a case like the one *sub judice* is not compulsory, but discretionary, and, therefore, the rule that where the complainant and defendant are each successful in one or more substantial issues, neither is entitled to costs against the other, applies; and this, obviously, extends to counsel fees as well."

The first order, under date of August 15th, 1932, is affirmed. The second order, under date of September 13th, 1932, is reversed without costs, and the record remitted to the court of chancery for appropriate action.

*For affirmance*—CASE, BODINE, VAN BUSKIRK, KAYS, DILL, JJ. 5.

*For reversal*—THE CHIEF-JUSTICE, TRENCHARD, PARKER, DONGES, HEHER, PERSKIE, HETFIELD, DEAR, WELLS, JJ. 9.