SARA F. BASEN AND GRACE F. GROSMAN, EXECUTRICES OF THE ESTATE OF ABRAHAM FISHMAN, DECEASED, PLAINTIFFS, v. CLINTON TRUST COMPANY, DEFENDANT.

Decided January 30, 1935.

For the plaintiffs, *Grosman & Grosman.*

For the defendant, *Burke, Sheridan & Hourigan.*

*Amicus curiæ* on behalf of the commissioner of banking and insurance of the State of New Jersey, in opposition to the motion, *Louis J. Cohen,* assistant attorney-general.

*Amicus curiæ* on behalf of the Reconstruction Finance Corporation, in opposition to the motion, *Frederick P. Smith.*

SMITH, WM. A., C. C. J. This is a suit by the plaintiffs to recover the balance of a deposit of moneys deposited with the defendant trust company in its savings department. The account was opened by the plaintiffs on July 28th, 1932, with a deposit of $5,000. At the end of 1932 the account had been increased by deposits so that the plaintiffs had to their credit $7,780. The defendant trust company, together with others, was closed by the March, 1933, proclamations. Thereafter the

defendant was permitted to open on a restricted basis which forbade the withdrawal of deposits made previous to the closing. Subsequently the defendant put into effect a reorganization as to its capital structure, which will be referred to later, and resumed business with the consent of the commissioner of banking and insurance, and new stock was issued, part of which was subscribed for by the Reconstruction Finance Corporation. The defendant received cash for the stock taken by the Reconstruction Finance Corporation, and the reorganization plan contemplated the depositors' taking stock for one-fourth of their deposits, and approximately one-fourth of the deposits was to be exchanged for participating certificates in a holding company formed to take over the frozen assets of the defendant. When a sufficient number of consents had been received from the creditors and stockholders of the defendant, the commissioner of banking and insurance permitted the defendant to open for business on an unrestricted basis.

Upon the opening there was placed to the credit of the plaintiffs, and the bank so notified them, the sum of $4,125.47. This amount was thereafter withdrawn by the plaintiffs and this suit is now brought to collect the balance of the deposit which was in the hands of the defendant company at the time it was closed in March, 1933.

The reorganization is set up as a defense to the action, and this is set forth under the first defense to the answer. The second defense to the answer is to the effect that the plaintiffs are barred from recovering on the ground of estoppel and that they have approved the reorganization agreement by their withdrawal of the deposit which was credited to them.

At the time of the closing of the trust company, the Trust Company act, which governed the charter of the defendant, provided by its tenth section (4 *Comp. Stat.,* p. 5659), in effect, that no change in the certificate of incorporation of a trust company incorporated under the act should be made whereby rights, remedies, or securities of existing creditors should be in any way impaired; and other sections, particularly section 22 and section 25, provide for proceedings where the company becomes unsafe and where the same was to be wound up by a receiver.

The reorganization was carried out by the defendant pursuant to an amendment of the Trust Company act passed in 1933 after the closing of the trust company and subsequent to the making of the deposits here sought to be recovered.

The statutes under which the reorganization was effected are chapter 116 (*Pamph. L.* 1933, *p.* 241; 1933 *Annual Stat. Ser.*, § 17-74), and chapter 287 (*Pamph. L.* 1933, *p.* 770; 1933 *Annual Stat. Ser.*, § 17-80). The latter statute was an amendment of the former in so far as the seventh section is concerned. It will not be necessary to quote these statutes at length; suffice to say that they provide for an amendment of the charter so as to issue the stock contemplated in the reorganization, and the seventh section particularly applies to the creditors. The requirement of the statute is that seventy-five per cent. of the creditors and depositors, and two-thirds of the stockholders consent to the plan, and that any of the remaining twenty-five per cent. of the creditors who do not consent are bound by the reorganization and must accept the stock and securities provided for by the reorganization.

The reorganization was carried out without the consent of the plaintiffs, and immediately one-half of the deposit was made available in cash being credited to the plaintiffs' open account, and was withdrawn. This suit is for the remaining half, which the defendant offers to pay half in stock and half in participating certificates in the holding company which took over the unliquidated assets of the defendant corporation.

The plaintiffs challenge the constitutionality of the 1933 amendments, particularly the second amendment covering section 7, in so far as it applies to them as creditors of the defendant at the time of the passage of the acts. It will be noted that the reorganization merely amended the existing charter and did not create a new company.

It is my conclusion that the act in question in so far as it affects the plaintiffs, is unconstitutional in that it is a violation of the New Jersey constitution, paragraph 3, section 7, article 4, which provides that the legislature shall not pass any * * * *ex post facto* law, or law impairing the obliga-

tion of contracts, or a law depriving any part of any remedy for enforcing a contract which existed when the contract was made.

It is also unconstitutional as being in violation of the United States constitution, article 1, section 10, which provides: "No state shall * * *. pass any law * * * impairing the obligation of contracts."

It seems to me sufficient in holding that these acts impair the obligation of existing contracts to refer to the following cases: *Moore* v. *Splitdorf Electric Co.*, 114 *N. J. Eq.* 358; 168 *Atl. Rep.* 741; *Baldwin* v. *Flagg*, 43 *N. J. L.* 495; *Vanderbilt* v. *Brunton Piano Co.*, 111 *Id.* 596; 169 *Atl. Rep.* 177.

In the case of *Moore* v. *Splitdorf Electric Co.*, *supra*, Mr. Justice Perskie, speaking for the Court of Errors and Appeals, affirms the principle that a statute providing a method of reorganization for a failing corporation cannot require a creditor against his consent to accept securities in place of a share of the corporation's assets.

It might be well to refer to the fact that in another state a statute similar to the one the constitutionality of which is here challenged, has been declared unconstitutional by the United States courts. *Shams* v. *Nebraska* (1931), 48 *Fed. Rep.* (2d ed.) 894.

It seems to me also that the statute is unconstitutional as being in violation of the fourteenth amendment of the United States constitution, section 1, which provides in part: "* * * nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

The reason for this is that the statute requires only the determination of the corporation itself as to the propriety of the change in obligation to the creditor, and the consent of the commissioner of banking and insurance. This clearly deprives the plaintiffs of their property without due process of law. No judicial forum is permitted for the purpose of reviewing the fairness of the plan or the fairness of the way it is being carried out. They have no opportunity, before the

plan is put into effect, of contesting or disputing claims of other creditors, but must take the stock and participating certificates in common with others who may not be entitled to them, or in an amount which may not be proper.

It has been claimed that this statute should be sustained under the police power and that it was a statute passed during an emergency. The statute in question is simply an amendment to the Trust Company act, and by its terms does not indicate that it is passed under any emergency. I do not therefore think that I may consider it in the guise of an emergency statute. Without any emergency provision, clearly no appeal could be made to sustain its validity as an exercise of the police power on the part of the legislature. The police power might to some extent be applied to the business of banking, but it has its limitations, and the means must have a reasonable relationship to the end. The trend of the decisions in both federal and state courts seems to be against any statute requiring a creditor to take a lesser amount for his debt as against his ratable share in the assets of his debtor.

That this statute cannot be sustained under the guise of an emergency statute, it seems only necessary to refer to the case of *Vanderbilt* v. *Brunton Piano Co., supra,* and to the same effect in so far as the court's reasoning is concerned, to the Minnesota mortgage moratorium case, *Home Building and Loan Association* v. *Blaisdell, 54 Sup. Ct. 231; 78 L. Ed. 413.*

The defendant in its answer sets up as a second defense what seems to be an allegation that the plaintiffs are barred by estoppel from maintaining this action, it being contended that they stood by without objection and allowed the Reconstruction Finance Corporation to advance the funds which were to be used in the rehabilitation of the defendant company and applied to the deposits of the creditors, including these plaintiffs.

There is no evidence that the plaintiffs ever notified the Reconstruction Finance Corporation of their objection to the plan. There is likewise no evidence to the effect that they took any stand or made any representation which might be

classed as an inducement on the part of the plaintiffs toward the Reconstruction Finance Corporation's advancing the money and purchasing the preferred stock. There can be found no evidence from the affidavits, nor is there any claim made, that the plaintiffs did anything to induce the Reconstruction Finance Corporation to make the advancement and purchase the stock.

It is my understanding with reference to the law of estoppel as applied to actions at law, that it must first appear that the plaintiffs, to be estopped, did some act which induced the person who is asserting the estoppel, to act, or that the plaintiffs stood by silently with knowledge, when they should have spoken.

It seems to me that there is no proof in the affidavits which would sustain either of these contentions. And the defense of estoppel must further fail because the defendant here is not the one to assert it. If there were any defense of estoppel, it would be a right of the Reconstruction Finance Corporation, and it is not a party to this suit.

The principle of equitable estoppel as recognized and enforced by courts of law is clearly stated in the case of *Central Railroad Co.* v. *MacCartney,* 68 *N. J. L.* 165 (at *pp.* 175, 176) ; 52 *Atl. Rep.* 575.

It is further contended on behalf of the defendant that the form of the remedy adopted by the plaintiffs is not available to them because this bank was insolvent before the reorganization was effected, and the money which has become available to pay to the depositors was obtained through this reorganization, and that at most, the plaintiffs should have only their ratable portion of the assets which the defendant had at the time the bank was closed.

This suit is against the original debtor. The reorganization is not one where title to assets was transferred to a new corporate entity and that corporate entity is sought to be held. The reorganization, as I have called it, in so far as these plaintiffs are concerned, is effected through the consent of a portion of the other creditors, stockholders, the commissioner of banking and insurance, and the issuing of additional pre-

ferred stock to raise the money with which to continue business, and participating certificates in certain assets of the defendant which were withdrawn from the other assets of the defendant. A reorganization along those lines does not change the corporate entity of the defendant or affect its liability at law to answer to the plaintiffs.

The plaintiffs have also asserted a claim that trust funds are specifically exempt from the restriction of payment of only one-half in cash following the reorganization; in other words that it is contemplated in the reorganization that such funds are to be paid in full by the defendant. The provision referred to does not apply to a trust such as the plaintiffs'. If the trust in question were one in which the defendant was the trustee, the case might be different. But the relationship in this case between the defendant and the plaintiffs is that of debtor and creditor.

The application to strike out the answer as being frivolous will be granted and the plaintiffs may enter summary judgment for the balance of their deposit with interest.