MIKE ORIFICE, PLAINTIFF-RESPONDENT, v. ELIZABETH TRUST COMPANY, A CORPORATION, DEFENDANT-APPELLANT.

Submitted October 25, 1935—Decided January 31, 1936.

For the plaintiff-respondent, *Abe P. Friedman* and *Morris Spritzer*.

For the defendant-appellant, *Edward R. McGlynn*.

The opinion of the court was delivered by

CASE, J. The appeal is by the defendant from a judgment entered for the plaintiff in the Supreme Court following the striking out of the answer and separate defenses.

On January 15th, 1934, the plaintiff was a depositor in a savings account in the defendant trust company. On that date he received a treasurer's check in the sum of $2,300, which check was presented for payment in the usual course

of business on January 18th, 1934. After delivery of the check but before presentment, defendant had been directed by the commissioner of banking and insurance, acting under the terms of the so-called Altman act (laws of 1933, chapter 66), to postpone the payment of deposits, and defendant, assuming that the direction was controlling, refused payment. Simultaneously with delivery of the check, defendant charged the withdrawal of $2,300 in plaintiff's deposit book. Defendant reduced the deposit account on its own books accordingly and increased its treasury account by the same sum. Thereafter, the defendant was reorganized under chapter 116, *Pamph. L.* 1933, known as the Reorganization act. The plan of reorganization included the issue of class A preferred stock for sale to the Reconstruction Finance Corporation with preference over the common stock and class B preferred stock, and also contained this provision:

"All depositors and creditors other than those which are required by law to be paid in full will waive fifty (50%) per cent. of their respective net unsecured claims against the Trust Company (after all legal offsets). The remaining fifty (50%) per cent. will be available for immediate and unrestricted use and/or withdrawal upon the reopening of the Trust Company. In exchange for the fifty (50%) per cent. waived by the unsecured depositors and creditors, the Trust Company will issue to each of such depositors and creditors shares of the aforesaid Class 'B' Preferred stock of a par value of $10 per share at the rate of one share of such stock for each $40 so waived."

This plan was approved by the required number of creditors and stockholders and by the commissioner of banking and insurance, and the defendant was permitted to resume its normal and usual banking business in accordance with the terms of those statutes. Although plaintiff did not consent to the plan of reorganization, he received, without prejudice to his rights, one half the amount of the treasury check. The dispute is whether he must accept class B preferred stock for the remainder of his claim or is entitled to full cash payment.

The issue upon which the controversy comes to us is whether

the answer and defenses were frivolous and therefore properly struck. Appellant resolves its argument *contra* that proposition into two contentions; first, that the respondent at the time of the presentation of his check for payment was a claimant to a deposit and as such was subject to the postponement feature of the Altman act; second, that under the Reorganization act and the plan adopted thereunder respondent was obliged to accept one-half of his claim in class B preferred stock.

First: The Altman act. The act had been invoked, after the check had been delivered but before it was presented, by the direction of the commissioner of banking and insurance. The pertinent provision of the statute is that the commissioner is authorized "to direct the postponement for any length of time of the payment of all or any proportion of the deposits in either demand or time accounts * * *." Was the respondent a depositor?

Appellant cites *Maurello* v. *Broadway Bank and Trust Co.*, 114 *N. J. L.* 167. This case holds that a general deposit in a bank creates the relationship of debtor and creditor between the bank and the depositor and establishes that if, when and so long as the respondent maintained a general deposit with the appellant, the two were creditor and debtor. But there are many transactions which create that relationship, and we are left without guidance as to whether respondent, having received the treasurer's check, nevertheless remained a depositor as to the face amount thereof.

If respondent was a depositor, what kind of a deposit did he maintain? He had had a savings account book, and, when he received his check for $2,300, an entry was made in his book showing the withdrawal of that sum. Obviously interest accruals ceased; and the mentioned sum no longer had any incident of a savings account. Was it a checking account? Not at all. It will hardly be argued that a banking institution would honor checks drawn against a fund which had been absorbed into an outstanding treasurer's check. Was it a simple deposit evidenced by a negotiable certificate that funds had been deposited which, upon return of the certificate,

would be repaid? Obviously it was not. There was no account with a depositor. The money had been transferred from an account debt to the treasury. The company had issued its negotiable instrument, payable on presentation. It owed the money, not as a depository to a depositor, because those relations had ended, but as a maker to a payee.

Appellant sees in the treasurer's check a likeness to a depositor's certified check and cites a number of foreign cases which we shall not here analyze further than to say that those which at first appear to be helpful are not so in fact because, for the most part, they ground in bankruptcies or receiverships wherein the effort of the claimant was to prefer himself above general creditors by insisting that a certified check represented a fund set aside especially for him. The conclusions generally are that the relations of creditor and debtor subsist and that the position of the holder of a certified check is not superior to that of the ordinary depositor, which, of course, may be true without meeting our situation. The citations are at cross purposes with our issue, as is illustrated by the citation of our own Supreme Court decision in *Hornung* v. *West New York*, 82 *N. J. L.* 266, wherein the point of the holding was that a cashier's check properly endorsed had no substantial distinction, for the purpose of qualifying a bidder on public work, from the certified check required by the conditions. Whatever similarity there may be in certain legal aspects, a treasurer's check is not a certified check and in the present circumstance is not, in our opinion, equivalent thereto. An original promise by a bank to pay from its own funds is not identical with the undertaking of a bank to hold back the funds of another maker to meet the requirements of the latter's check.

We must look to our statute because the problem is one of construction. When we do that there appears to be no problem. The power of the commissioner was to postpone the payment of deposits; and we have already found that when he exercised that authority the money owing to respondent was not a deposit. The commissioner's instructions did not apply to respondent's check. The trust company was under

the legal duty to honor the check when it was presented. Respondent was then entitled to full and immediate payment.

Second: The Reorganization act. Section 7 of the statute provides that a bank or trust company within its purview may, by the method and under the conditions therein set forth, adopt a reorganization plan and that such plan may provide that each creditor and depositor must subscribe for preferred stock to the amount of a certain percentage of his claim, and that: "Such reorganization plan shall become effective * * * (2) when * * * (a) depositors and other creditors of such bank, trust company or savings bank representing at least seventy-five per centum (75%) of its total deposits and other liabilities as shown by the books thereof and (b) stockholders owning at least two-thirds of its outstanding capital stock as shown by the books thereof, shall have consented in writing to the plan or reorganization; provided, however, that claims of depositors or other creditors which under existing law are entitled to full and immediate payment, even though said bank, trust company or savings bank is operating on a restricted basis, shall not be included among the total deposits and other liabilities of said bank, trust company or savings bank in determining the seventy-five per centum (75%) thereof as above provided." The statute (section 8) further provides that "in any reorganization which shall have been approved and shall have become effective as provided herein, all depositors and other creditors and stockholders of such bank, trust company or savings bank, whether or not they shall have consented to such plan of reorganization, shall be fully and in all respects subject to and bound by its provisions, and claims of all depositors and other creditors shall be treated as if they had consented to such plan of reorganization."

It is conceded, and we think properly, that the claims of depositors or other creditors which, under existing law, were entitled to full and immediate payment, even though the banking company was operating on a restricted basis, were excluded from the application of the seventh section. Appellant perfunctorily asks whether the same class of claims is

excluded from the purview of section 8. We think that no rational construction can lead to other than an affirmative answer. We read in the statute an intent to exclude those who hold claims "which under existing law are entitled to full and immediate payment" from those "depositors and other creditors" who form the aggregate upon which the seventy-five per centum is calculated and who are bound by the reorganization plan.

The remaining question is whether respondent's claim was within the exception; and that has been already answered in our finding that the claim, notwithstanding the restricted operation of the bank under the Altman act, was entitled to full and immediate payment. Appellant urges that this disposition makes meaningless the words "and other creditors" in the application of section 8 to "all depositors and other creditors." Not so. Still within the class of affected claimants are creditors with unmatured obligations. Such, although under certain circumstances they may be entitled to preference in reorganization proceedings taken under chapter 433 of the Pamphlet Laws of 1933, are not in the "full and immediate payment" class. Chapter 116, *Pamph. L.* 1933, and chapter 433, *Pamph. L.* 1933, were both banking reorganization acts, passed in the same year by the same legislature; the former continues the same corporate structure; the latter provides for a new incorporation. It does not appear why the one should except from its restrictions creditors "entitled to full and immediate payment" while the other excepts creditors entitled to "preference in payment;" but the distinction is there, clearly written. The latter statute is not by its title an amendment of or a supplement to the former; and it is not in its body a revision of the subject-matter.

The judgment below will be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, LLOYD, CASE, BODINE, DONGES, HEHER, PERSKIE, HETFIELD, DEAR, WELLS, WOLFSKEIL, RAFFERTY, JJ. 13.

*For reversal*—None.