Monmouth County Circuit Court.

HARRY E. NEWMAN, TRUSTEE IN BANKRUPTCY OF THE ESTATE OF KALMAN B. MOHAL, PLAINTIFF, v. ASBURY PARK AND OCEAN GROVE BANK, A BANKING CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT.

Decided March 27, 1937.

For the plaintiff, *Bernard Freedman.*

For the defendant, *Lester C. Leonard.*

LAWRENCE, C. C. J. This suit was submitted to the court without a jury. The facts covered by stipulation and found from evidence received at the trial may be stated as follows: On August 27th, 1930, plaintiff was appointed trustee in bankruptcy of the estate of Kalman B. Mohal by the United States District Court for the district of New Jersey.

Defendant is a banking corporation, organized in 1889, under the statutes of the state then applicable. It engaged in the usual business of a state bank and continued to do so until December 24th, 1931, when, because of frozen assets and other reasons affecting its financial stability, within the recognized definition of insolvency, and therefore unable to carry on its normal functions in safety to depositors, creditors and stockholders, it was closed by direction of the commis-

sioner of banking and insurance who placed an agent in charge for the purpose of liquidation.

At the time it was closed, and for some time prior, the bank was, by appointment of the Federal District Court, a depository for funds of bankrupt estates. On the date of closing plaintiff had on deposit with the institution the sum of $10,018.50. It is conceded that the relation of plaintiff to the bank was that of a creditor and that he had no preferential status.

Between December 24th, 1931, and January 12th, 1933, the process of liquidation went on, and, on the latter date, the commissioner of banking and insurance paid to plaintiff a dividend of $500.93. During the period, certain stockholders and creditors, including depositors, made efforts to have the bank reopened, and, on May 1st, 1933, it was reorganized and reopened, pursuant to the provisions of "An act concerning banks, trust companies and savings banks having shares of capital stock," approved April 12th, 1933, known as chapter 116 of the session laws (*N. J. Stat. Annual* 1933, § 17-74), as amended by chapters 195 and 287 (*N. J. Stat. Annual* 1933, §§ 17-79, 80), under a plan approved by the commissioner, having been first determined by him to be fair and equitable to all depositors, other creditors and stockholders and in the public interest. It was consented to by those representing more than seventy-five per cent. of the total deposits and other liabilities as shown on the books, and by stockholders owning more than two-thirds of the shares of stock.

The plan provided for an amendment of the bank's original charter to allow the issue of thirty thousand shares of preferred stock, to be held in trust for depositors and other creditors in amounts constituting liabilities at the time the bank was closed by the commissioner, until its liability to each should be paid in full, with cumulative dividends at the rate of one-tenth of one per cent. per annum. The trustee of this stock to have exclusive voting power. Plaintiff did not consent or object to the plan. It does not appear, however, that any formal notice of it was ever sent him.

The bank's original charter was accordingly amended to provide for the issue of the preferred stock, which was duly

issued and the proportionate share or interest of plaintiff therein was included, credited to him and is now held by the trustee. On the date indicated, the commissioner withdrew, turning the institution over to a new board of directors with a new staff of officers and it has since carried on its normal functions and conducted its regular business under its original charter amended as stated.

The plan by which the bank reorganized and under which it reopened, with the approval of the commissioner, among other things, contained a condition that there should be no preference among creditors (*inter sese*) and that the general creditors to whom the institution was liable prior to the reopening should not be entitled to a preference over like claimants. Notwithstanding, on August 21st, 1933, plaintiff presented to defendant, at its banking house, a check signed by him, countersigned by a referee in bankruptcy of the District Court and drawn to his (plaintiff's) order for $4,547.55, and demanded payment. It was refused by the bank on the ground that he had not become a depositor since the bank had reopened, but remained subject to the conditions of the plan approved by the banking commissioner, even though not consenting to it, since section 8 of the act of 1933, as amended (*supra*) provides that in any reorganization which shall have been approved and shall have become effective as provided, all depositors and other creditors and stockholders, whether or not they shall have consented to such plan shall be fully and in all respects subject to and bound by its provisions, and claims of all depositors and other creditors shall be treated as if they had consented to such plan of reorganization.

The amount of the check presented by plaintiff and of which he demanded payment was arrived at in the following manner: On March 4th, 1916, the defendant bank as principal and American Surety Company as surety entered into a bond with the United States of America in the sum of $10,000. This bond was filed with the clerk of the District Court and was given as required by an order of the court designating the bank as a depository of funds of bankrupt estates deposited by receivers and trustees. The bond was conditioned for the repayment of such moneys. A proceeding was instituted in the District Court on the bond, after the

bank was closed, and, on March 28th, 1932, an order was entered directing the surety company to pay to the clerk the penalty of the bond, which it did. As provided in the order the clerk thereupon distributed the proceeds among the several receivers and trustees in bankruptcy who had deposits with the bank when it was closed. The distributive share received by plaintiff was $4,970.02, which, with the dividend of $500.93 paid him by the commissioner while the bank was in his custody in liquidation, reduced plaintiff's claim to $4,547.55, the amount of the check, payment of which was refused by the bank when presented and for which he seeks a recovery, with interest, in the present suit.

In the order of the District Court directing a distribution of the proceeds of the surety company's bond to the receivers and trustees in question, it was provided that the company should be subrogated to the rights of such receivers and trustees against the defendant, its liquidators, successors and assigns, to this extent; if and when any dividend or dividends are paid, such sums as would, with the sum paid under the order, affect the return to the receivers and trustees of the full amount of their deposits, with interest; and, second, all sums paid on such dividends or in repayment of the deposits in excess of the sum required to make them whole, should be paid to the surety company on account of and to the extent of the repayment of the $10,000 paid by it to the clerk of the District Court.

It may be said in passing that while subrogation is provided for in protection of the interest of the surety company, there is nothing in the order in that respect which militates against plaintiff maintaining the present suit, since it does not involve the amount paid by the surety company and that part thereof received by plaintiff as a proportionate share of the proceeds of its bond. The amount, for which recovery is here sought, is the balance of the original deposit in which the surety company is not concerned and as to which it has no right of subrogation.

The practical ground advanced in behalf of plaintiff involving his alleged right to recover from the defendant at this time the balance of his deposit rests on the theory that since the bank has reopened under its original charter as

amended, he should now be regarded as an ordinary depositor of the same class as those now having checking accounts with the institution, who have become such since the bank reopened and resumed its normal functions and regular business.

In other words, the court is urged to ignore the period when the bank was closed, in the custody of the commissioner and in process of liquidation before reorganization, and regard plaintiff's relation to the institution as not altered or changed, but the same as it was at its inception when he had the right to check against his account.

It seems hardly necessary to say that the theory thus advanced is not tenable. Plaintiff has not the rights of a present day depositor or creditor. His relation to the bank was obviously altered by the liquidation undertaken by the commissioner and his right to have had that liquidation carried through to a finality, which he now claims, was suspended by the authorized reorganization under the statute (*supra*) and the issue of preferred stock for the benefit of the original depositors and other creditors, including plaintiff, which stock may ultimately be retired when the bank shall have paid in full, through the medium of dividends to be first earned and paid on the stock, to the exclusion of the common stockholders.

In this way the liquidation originally undertaken by the commissioner is proceeding, but under the auspices of the new management, with a reopened bank, doubtless to the advantage of plaintiff and the other depositors in his class, in that it may result in their receiving the full amount of their claims, instead of limited dividends occasioned by a sacrifice of assets under forced liquidation.

It is further urged in support of the theory upon which plaintiff seeks recovery here that he was not bound by the plan approved by the commissioner under which the bank reopened, since he did not consent to it and the statute of 1933, under which it was brought about, especially section 8 is unconstitutional, citing article I, of the federal constitution, section 10 inhibiting state laws impairing the obligation of contracts, and paragraph 3, section 7, article 4 of the state constitution to the same effect and prohibiting the legislature from passing laws depriving a party of a remedy for enforcing a contract existing when it was made.

While counsel for plaintiff refers to *Moore* v. *Splitdorf Electrical Co.*, 114 *N. J. Eq.* 358; 168 *Atl. Rep.* 741, and a number of other cases in this and other states as authority for the contention, they are not found applicable here, as it is not to be overlooked that banks such as defendant are affected with a public interest and are *quasi*-public institutions, as was pointed out in *In re Mechanics Trust Co.*, 119 *N. J. Eq.* 141; 181 *Atl. Rep.* 423, and in which the statute and amendments here considered were declared constitutional under the police power of the state, and a number of cases thought to support that holding are digested. See, also, *Orifice* v. *Elizabeth Trust Co.*, 116 *N. J. L.* 110; 183 *Atl. Rep.* 192, in which the statute is discussed without criticism as to any supposed constitutional infirmity.

It may be said, moreover, that if the act be declared unconstitutional, plaintiff would occupy the anomalous position of now requiring a liquidation of the assets and liabilities of the bank as they were when it was closed by the commissioner, in order that he may obtain such dividends as he would have been entitled to had such liquidation been carried through and the institution put out of existence. That this could not be done now seems apparent. Public policy would require that it should not be permitted at this late day. Plaintiff will still receive his dividends as they are earned by the bank, perhaps not so soon as in case of liquidation, but ultimately in all probability in a larger amount, if not, indeed, in full, which would, of course, be to his advantage.

It is, however, urged that if plaintiff cannot have his right to recover through liquidation, he should be permitted to receive the full amount of his claim at this time as an ordinary depositor of the bank. It seems unnecesasry to state that he is not legally entitled to such a remedy. This would give him a preference over the original depositors and creditors to which he was not at any time entitled and is not now.

The conclusion is that, under the evidence submitted, plaintiff has not shown a right to recover and that, for the reasons heretofore indicated, a judgment of no cause should be entered.