THERESA McSWEENEY, PLAINTIFF, v. EQUITABLE TRUST COMPANY, A CORPORATION, DEFENDANT.

Decided April 18, 1938.

For the plaintiff, *Bilder, Bilder & Kaufman* (*Morris M. Schnitzer,* of counsel).

For the defendant, *Moore & Butler* (*Merritt Lane,* of counsel).

JAYNE, S. C. C. This motion was made on behalf of the plaintiff for the allowance of a rule striking out the answer filed by the defendant in this action. A precursory reference to the allegations of the complaint and to the averments of the answer suffices to exhibit the controversial points debated by counsel. Affidavits have been submitted which more definitely disclose the underlying factual situation but it is not observed that any fact of influential legal significance is in dispute. The complaint alleges that on September 1st, 1933, the plaintiff was a depositor of the defendant institution. On that date there remained credited to her general account the sum of $19,197.57 and to her savings or interest account the sum of $176,360.99. The complaint declares that the defendant thereafter refused to pay to her the full amounts credited to her accounts and offered and tendered to her a stated number of shares of the preferred stock of the defendant company, which the plaintiff rejected and declined to

accept, hence the plaintiff prosecutes this action to recover from the defendant the sum of $195,558.56 with interest.

The averments of the answer describe the prevailing economic conditions which were then provoking a widespread financial depression endangering the solvency of banking institutions. The answer refers to the banking holiday proclaimed in March, 1933, by the president of the United States and by the governor of this state; the opening of the defendant bank on a restricted basis under the authority of the Altman act and the ultimate reorganization of the company with the approval of the commissioner of banking and insurance pursuant to chapter 116, *Pamph. L.* 1933, as amended. Additionally, it is averred that after the resumption of business by the defendant under its amended charter, the plaintiff availed herself of the immediate credit of five per centum of her deposits and for a designated period thereafter continued to deposit with and withdraw funds from the defendant company. Moreover, it is pleaded in the answer that the Federal Reserve Bank of Philadelphia, the Reconstruction Finance Corporation, the Pennsylvania Company of Philadelphia, the Guarantee Trust Company of New York, who were creditors of the defendant, subordinated their claims to those of the new depositors in consequence of the reorganization of the company.

The reasons written down by counsel for the plaintiff in support of the present motion are that chapter 116, *Pamph. L.* 1933, as amended by chapters 195, 287, 407 of *Pamph. L.* 1933, is unconstitutional because in conflict with article I, section 10 and with section 1 of the fourteenth amendment of the constitution of the United States and in conflict with clauses 1 and 16 of article I of the constitution of New Jersey and that the factual averments of the answer are insufficient in law to estop the plaintiff from the prosecution of this action.

The affidavits verify all of the material averments of fact embodied in the answer concerning the reorganization of the defendant company in conformity with the statute of 1933. On August 23d, 1933, the commissioner of banking and

insurance evidently determined that the proposed plan of reorganization was fair and equitable to all depositors, creditors and stockholders of the defendant company and likewise in the public interest. This is the basic standard established by the statute for the guidance of the commissioner. *Pamph. L.* 1933, *ch.* 287, *p.* 770. The reorganization was approved by the commissioner. On January 6th, 1934, the restricted or so-called frozen deposits were converted into preferred stock. On February 1st, 1934, the defendant was thus enabled to reopen its doors for business. The plaintiff did not affirmatively assent to the transition of her credits from frozen deposits into shares of preferred stock. A copy of the amended certificate of incorporation of the defendant accompanies the affidavits. It provides, *inter alia,* that: "No dividends or other earnings shall be paid to the holders of common stock until all the preferred stock shall have been redeemed and all dividends due thereon fully paid and/or all of said preferred stock converted into common stock as herein provided for. * * * In the event of any liquidation or dissolution or winding up (whether voluntary or involuntary) of the corporation, the holders of the preferred stock shall be entitled to be paid in full their redemption price of Thirty ($30.00) Dollars per share for said preferred stock and the unpaid dividends accrued thereon, before any amount shall be paid to the holders of the common stock * * *." The foregoing charter provisions are in harmony with the pertinent terms of the statute.

Section 6 of the statute (*Pamph. L.* 1933, § 6—at *p.* 428) is here quoted: "Subscriptions to such preferred stock may be paid for either in cash or by an off-set in the same amount against any deposit, balance or balances on the books of such bank, trust company or savings bank, or partly by cash and partly by such off-set against deposit balance, or balances, or may with the approval of the commissioner of banking and insurance, be paid for by assets in which such bank, trust company or savings bank may lawfully invest."

Section 8 (*Pamph. L.* 1933, at *p.* 244) is as follows: "In any reorganization which shall have been approved and

shall have become effective as provided herein, all depositors and other creditors and stockholders of such bank, trust company or savings bank, whether or not they shall have consented to such plan of reorganization, shall be fully and in all respects subject to and bound by its provisions, and claims of all depositors and other creditors shall be treated as if they had consented to such plan of reorganization."

The predominate question projected for determination by the present motion obviously relates to the constitutionality of the act of 1933. Concerning this question there exists some divergency of opinion among some of my brethren of the Circuit Court bench. *Basen* v. *Clinton Trust Co.*, 13 *N. J. Mis. R.* 252; 177 *Atl. Rep.* 675; reversed on other grounds, 115 *N. J. L.* 546; 181 *Atl. Rep.* 67; *Newman* v. *Asbury Park, &c., Bank*, 15 *N. J. Mis. R.* 395; 191 *Atl. Rep.* 864. Assuredly, a statute should not be declared unconstitutional unless its unconstitutionality is clearly apparent and definitely perceived. All doubts should be resolved in its favor. The statute of 1933 and its amendments were enacted by the legislature in the exercise of the police power of the state. Initially, it is the function of the legislature to determine the existence of conditions and exigencies which call for the exercise of the sovereign police power. The police power, its availability and application for the general public welfare are subjects which have been so studiously examined and so elaborately expounded in the current decisions of our courts that any general treatment of these subjects now becomes repetitious and redundant.

When it is asserted, appropriately, that the regulations imposed in the exercise of the police power violate the fundamental law and overstep constitutional limitations, then it is within the jurisdiction of the courts to determine whether the particular subject of the police regulation falls within the range of this sovereign power and whether the regulations so imposed and the means so adopted are reasonable and fairly suitable and appropriate for the accomplishment of the purpose in view.

In considering the fitness, propriety, scope and extent of the police power employed, there is sound reason to determine the character of the activity or business over which the power is to be exerted, for the police power is a sovereign right of the government existing essentially to protect the lives, health, morals, comfort and general welfare of the people.

It is said that "banks are to the commercial world what arteries are to the human system." *Carlnell* v. *Commercial Bank and Trust Co.* (*Court of Appeals, Kentucky,* 1913), 153 *Ky.* 798; 156 *S. W. Rep.* 1048, 1049. The business of banking is undoubtedly affected with a vital public interest. *In re Mechanics Trust Co.,* 119 *N. J. Eq.* 141; 181 *Atl. Rep.* 423, replete with pertinent citations. Bank failures are now serious public calamities. The power to stringently regulate arises from the fact that the banking business is coupled with a public interest and the public welfare requires and justifies reasonable regulations and restrictions. The right of the defendant to conduct a banking business has at all times since the incorporation of the company been subject to reasonable regulation under the reserved police power. The financial stability and the liquidation of banks are matters of general public interest and are thus within the latitude of the police power. The economic injury to the welfare of a community occasioned by the liquidation of its banks is now a matter of common knowledge. Recent experience has disclosed that hasty or forced liquidation results in a destruction of economic values to the injury of depositors and others.

The notion that the police power cannot be exercised in any field of activity if it in any slight degree affects or impairs contracts previously entered into between individuals is purely illusory. The sovereign right to safeguard the general welfare of the people and to promote the common weal is paramount to the contractual rights of individuals. *State Board of Milk Control* v. *Newark Milk Co.,* 118 *N. J. Eq.* 504 (at *p.* 519); 179 *Atl. Rep.* 116; *Hourigan* v. *North Bergen Township,* 113 *N. J. L.* 143, 149; 172 *Atl. Rep.* 785. In *State* v. *Brand,* 58 Sup. *Ct. Rep.* 450, Mr. Justice Roberts

stated, "our decisions recognize that every contract is made subject to the implied condition that its fulfillment may be frustrated by a proper exercise of the police power * * *." *Home Building and Loan Association* v. *Blaisdell*, 290 *U. S.* 398; 54 *Sup. Ct.* 231; 78 *L. Ed.* 413; 88 *A. L. R.* 1481; *Treigle* v. *Acme Homestead Association*, 297 *U. S.* 189; 56 *Sup. Ct.* 408; 80 *L. Ed.* 575; 101 *A. L. R.* 1284; *Hourigan* v. *North Bergen Township, supra.*

The very existence of laws presupposes human beings living in a social complex and certainly contracts made with institutions affected with a public interest are inherently subject to the paramount power of the sovereign state to enact through the legislature additional remedial legislation in the interest of the public welfare, prescribing the supervision, regulation or liquidation of such corporations.

In the recent case of *Bucsi* v. *Longworth Building and Loan Association*, 119 *N. J. L.* 120; 194 *Atl. Rep.* 857, our Court of Errors and Appeals held that chapter 102, *Pamph. L.* 1932, limiting withdrawals from building and loan associations was a valid exercise of the police power of the state for an end that is in fact public. The contract between the building and loan association and the member was said to be congenitally affected with a public interest and carried with it the infirmity of the subject-matter.

In *Doty* v. *Love*, 295 *U. S.* 64; 55 *Sup. Ct.* 558; 79 *L. Ed.* 1303, a statute of Mississippi relating to the reorganization of closed banks and quite similar to our statute, was alleged to be in contravention of the provisions of the constitution of the United States. It was resolved that the statute was constitutional.

The Court of Appeals of New York in *Shepherd* v. *Mount Vernon Trust Co.*, 269 *N. Y.* 234; 199 *N. E. Rep.* 201, was recently concerned with an action in which the plaintiffs sought to recover their deposit from the reorganized trust company. The factual situation closely resembles that of the present case. The judgment dismissing the complaint was affirmed.

Vice-Chancellor Egan in *In re Mechanics Trust Co., supra,* concluded that our statute was not in conflict with the state or federal constitution.

The conclusions expressed in *Baldwin* v. *Flagg,* 43 *N. J. L.* 495; *Moore* v. *Splildorf Electric Co.,* 114 *N. J. Eq.* 358; 168 *All. Rep.* 741, and *Vanderbilt* v. *Brunton Piano Co.,* 111 *N. J. L.* 596; 169 *All. Rep.* 177, have no determinative bearing upon the question in hand. *Bucsi* v. *Longworth Building and Loan Association, supra.*

The statute of 1933 in reality supplied a method of liquidation which, in the existing economic conditions, was reasonably necessary not only for the better protection of the depositors and other creditors, but also for the common good of the public. The plan under which the defendant company was reorganized was deemed by the commissioner of banking and insurance to be fair and equitable to all depositors, creditors and stockholders of the institution and likewise in the public interest. It is not made apparent that his judgment was groundless or erroneous. The plan of reorganization also received the approval of the substantial majority of those directly interested. What disadvantage does the plaintiff suffer. The bank was closed. Her right to demand payment of the amount of her deposits was suspended. Liquidation would otherwise have been undertaken by the banking commissioner or a receiver. As a result of the reorganization, the bank has been authorized to resume business, each depositor has received a percentage of his or her deposit and the claim of each depositor for the balance of the indebtedness is evidenced by a proportionate amount of preferred stock which, in accordance with the provisions of the amended charter, is to be gradually retired. In view of the ultimate outcome of the plan, the status of the parties has not been essentially changed. The plan of reorganization is of the nature of a composition agreement intended to be made effective either by the unanimous consent or by provision of the statute in other stated circumstances. Obviously it was not the intention of the legislature in the enactment of this

statute to liberate the banks from their obligations to their depositors. The manifest purpose of this legislation was to enable the creditors to take united action, consistent with the public interest, for the more auspicious recovery of their debts. An individual may not justly complain of a reasonable legislative invasion of his usual rights when a situation arises which properly calls for the imposition of such a restriction for the purpose of averting immediate and impending dangers which threaten the general welfare. There is no mathematical formula or unchanging yardstick by which in all circumstances the validity of a statute can always be confidently determined. "Every case must be determined on its own circumstances." *Von Hoffman* v. *City of Quincy,* 4 *Wall* (*U. S.*) 535, 534; 18 *L. Ed.* 403. "Circumstances may so change in time or so differ in space as to clothe with a public interest what at other times or in other places would be a matter of purely private concern." *State Board of Milk Control* v. *Newark Milk Co., supra.* It has long been the established rule that if there be a permissible doubt whether an act of the legislature transgresses constitutional limitations, the courts will not declare the act invalid. The legislature is supreme in its proper sphere. Its enactments should not be nullified unless it clearly appears that the legislature by such enactments overstepped the existing constitutional inhibitions.

Here we are concerned with the present rights of the plaintiff. In the consideration of the asserted claims of individuals, there is always a strong motivating impulse to follow that intuitive sense of what is just or unjust. The answer embraces averments which reveal that the plaintiff availed herself of some of the benefits and advantages of the reorganization. The present action was not instituted until years had elapsed following the reorganization. Meanwhile the plaintiff was aware of the course of action taken by most of her fellow depositors and of the actual continued operation of the reorganization plan. Certainly it might be inferred from such facts that she heretofore acquiesced in the plan

and in its pursuit by those who were similarly or otherwise situated.

"Where a constitutional provision is designed for the protection solely of the property rights of the citizen, it is competent for him to waive the protection and to consent to such action as would be invalid if taken against his will." 1 *Cooley Const. Lim.* (*8th ed.*) 368.

Waiver and estoppel are, so to speak, of the same family. These terms are at times employed as if they were convertible or synonymous. Each has, however, its characteristic or distinguishing significance. *Central Rd. Co.* v. *MacCartney,* 68 *N. J. L.* 165, 175; 52 *Atl. Rep.* 575; *Crawford* v. *Winterbottom,* 88 *N. J. L.* 588; 96 *Atl. Rep.* 497; *Freeman* v. *Conover,* 95 *N. J. L.* 89; 112 *Atl. Rep.* 324. The appropriate force of each doctrine is to prevent injustice. In *Shepherd* v. *Mount Vernon Trust Co., supra,* Judge Lehman remarked: "They cannot assert the invalidity of the proceedings and at the same time share in the benefit resulting from such proceedings. That conclusion is based upon well-recognized principles of fairness and justice, and in accord with an unbroken line of judicial authority. It is immaterial whether we classify these principles in the category of estoppel or of waiver or of implied consent." Although the plaintiff was fully informed of the proposed plan of reorganization and although she personally declined to consent, she was aware of the action of the other depositors which resulted in its adoption. She did not promptly challenge its validity and assert the impairment of her contractual rights, but chose to accept the immediate payment of a portion of her deposits and continued to utilize the reorganized bank as a depositary of her funds. It might be inferred from evidence to be adduced under some of the averments of the answer that the plaintiff thus exhibited an indifference to the alleged abridgement of her rights and in reality an acquiescence in the reorganization proceedings. Unaccountable and inexcusable delay in the assertion of a private right can logically support a conclusion of the acquiescence in its loss. The evidence might

be such as to enable the defendant to successfully invoke the doctrine of estoppel under the authority of *Basin* v. *Clinton Trust Co.*, 115 *N. J. L.* 546, 548; 181 *Atl. Rep.* 67.

Therefore the defenses to which the motion is addressed are neither so palpably or inherently false or so obviously unsubstantial, idle and frivolous as to warrant the allowance of a rule striking out the answer.

The filing of the foregoing memorandum was deferred to await the opinion of the Court of Errors and Appeals in *Newman* v. *Asbury Park and Ocean Grove Bank*, 120 *N. J. L.* 122. The opinion now rendered and filed in the Newman case amply supports the denial of the motion in the present action.

The motion is accordingly denied.