### THE STATE, EX REL. GEORGE A. LEWIS, v. THE BOARD OF PUBLIC WORKS OF JERSEY CITY.

---

### THE STATE, EX REL. JOHN McLAGHLIN, v. THE SAME.

The act of March 6th, 1888 (*Pamph. L., p.* 135), provides that no person "holding a position" in any city, &c., whose "term of office" is not fixed by law, and receiving "a salary" from such city, &c., who is an honorably discharged soldier, &c., shall be "removed from such position," except for good cause shown after a hearing, but such person shall hold his position during good behavior, and shall not be removed for political reasons. *Held—*

1. That the provisions of this act, though not restricted to offices *eo nomine* at common law or created by statute, applies only to employments the duties of which are analogous to the duties of an office; that is, duties that are continuous and permanent and specially pertaining to the position.

2. That a person appointed "bridge-tender" by a formal resolution of the Board of Public Works of Jersey City is a person "holding a position" within the meaning of the act.

3. That a person employed by a member of the board as a general workman, to perform such work at the pumping station, under the charge of the board, as might from time to time be required by the foreman, was not a person "holding a position" within the meaning of the act.

On rules to show cause for a *mandamus*.

Argued at February Term, 1889, before Justices DEPUE and DIXON.

For the relators, *Jas. S. Erwin* and *Gilbert Collins.*

*Contra, John A. Blair.*

The opinion of the court was delivered by

DEPUE, J.    The relators apply for writs of *mandamus* to obtain the benefit of an act entitled "An act in regard to honorably discharged Union soldiers," approved March 6th, 1888.    *Pamph. L., p.* 135.

The act provides "that no person holding a position in any city or county of this state, whose term of office is not now fixed by law, and receiving a salary from such city, county or state, who is an honorably discharged soldier or sailor, having served in the war of the rebellion, shall be removed from such position, except for good cause shown after a hearing, but such person shall hold his position during good behavior, and shall not be removed for political reasons."

The relators are both honorably discharged Union soldiers. They were dismissed from their employment without a hearing. Their dismissal occurred after the act took effect. Their right to redress by writs of *mandamus* depends upon the construction of the statute with respect to the class of employes to which its provisions relate.

The persons for whose benefit the act was designed are described as persons "holding a position" "whose term of office is not fixed by law." The act confers upon such an incumbent a tenure "during good behavior." He is not to be

removed for political reasons, nor removed without good cause; that is, for reasons affecting either his conduct or his qualifications, and for cause shown on a hearing afforded to him prior to his removal.

It is manifest that the legislature did not contemplate that the act should apply to every grade of employment. The tenor of the act, and its language throughout, indicate a purpose to apply it to positions analogous to offices as distinguished from mere employment. In every definition given of the word "office" the features recognized as characteristic, and distinguishing it from a mere employment, are the manner of appointment and the nature of the duties to be performed—whether the duties are such as pertain to the particular official designation and are continuing and permanent and not occasional or temporary. *United States* v. *Maurice,* 2 *Brock.* 96, 118; *United States* v. *Hartwell,* 6 *Wall.* 385, 393; *Sheboygan Co.* v. *Parker,* 3 *Id.* 93; *United States* v. *Germaine,* 99 *U. S.* 508, 511; *In Matter of Oaths,* 20 *Johns.* 493, *per* Platt, J. The word "position" was adopted in the act to indicate a purpose, not to restrict the benefits of the act to offices *eo nomine* existing at common law or created by statute; but, nevertheless, that expression, as well as the language of the act throughout, indicates the purpose to be to apply its provisions to those employments the duties of which are analogous to the duties of an office; that is, duties that are continuous and permanent and specially pertaining to the position assumed. It would be an unreasonable construction of the act to apply it to employments which are occasional or temporary, or where the services to be performed are of a general character and such as may from time to time be directed by a superior, without being in any manner indicated by the special nature of the employment, and give to such employes a tenure during good behavior, and forbid their discharge except after a hearing and for a cause which should stand the judicial test upon *certiorari* as good cause.

In the case of Lewis, one of the relators, he was regularly appointed bridge-tender by a resolution of the Board of Public

Works, as follows : "Resolved, that George A. Lewis be and is hereby appointed bridge-tender of Hackensack bridge, at the salary of twenty-five dollars per month, to take effect immediately.    Dated June 1st, 1886."

The relator was formally appointed by the board, by a resolution adopted by that body in its official capacity.   His duties were such as pertained to the position of "bridge-tender." They were not otherwise defined.   They were also duties in their nature continuous and permanent.   Immediately upon the relator's removal another person was appointed to exactly the same position.   In view of the manner of appointment and the nature of the duties to be performed, we think the relator was "a person holding a position" within the meaning of the act.   His discharge without a hearing was in violation of the act, and he is entitled to be restored to his position.

The other relator, McLaghlin, was employed as a general workman at $55 dollars a month, if he made full time.   He was one of eight workmen employed at the Belleville water works as general workmen.   The duties of these workmen are described by the foreman at the water works in these words : "The duties of general workmen at the works at Belleville are to wheel coal, remove ashes, help the blacksmith, machinist's assistant, help the rigger and fireman and, if necessary, go for water.   When I say wheeling coal, that would be in the absence of the coal passer, but only for the time being."

This relator was not employed by any official act of the board.   He was "put to work" by the chairman of the board. The only official evidence of his employment is the appearance of his name on the pay rolls.   Neither in the mode of his employment nor in the nature of its duties does the relator come within the provisions of the act.

In the case of Lewis a writ of peremptory *mandamus* should issue for his restoration to his former position, with costs.

In the case of McLaghlin the rule to show cause should be discharged, without costs.