THE STATE, EX REL. THOMAS PIERSON, v. JOHN H. O'CONNOR.

1. The office of clerk of the District Court of a city is not within the class of offices intended by the act of April 9th, 1889 (*Pamph. L.*, p. 231), which prohibits the removal of one who is an honorably discharged Union soldier or sailor, having served in the war of the rebellion. The act concerns those only who hold appointments to offices and positions *quasi* official and who are engaged as agencies in the administration of municipal government.

2. The act of March 9th, 1891 (*Pamph. L.*, p. 101), which provides that "no person now holding an appointive position in any city or county of this state, and receiving a salary from such city or county, who is an honorably discharged soldier or sailor having served in the war of the rebellion, shall be removed from such position except for cause,"

being limited to those members of the designated body holding office at the time of the passage of the act is void, it being a special law, in that it fails to include within its provisions all the members which constitute the selected group or class.

———

On *quo warranto*. On demurrer to information. The facts appear fully in the opinion of the court.

Argued at June Term, 1891, before BEASLEY, CHIEF JUSTICE, and Justices VAN SYCKEL, KNAPP and GARRISON.

For the relator, *J. Frank Fort.*

For the defendant, *Frederic W. Stevens.*

The opinion of the court was delivered by

KNAPP, J. The relator was appointed to and served in the office of clerk of the First District Court in the city of Newark. When the judge who appointed him went out of office and was succeeded by the present incumbent, the defendant was chosen by the present judge of that court to the office of clerk, and is, after due installment, performing its duties.

The act constituting District Courts in the city of Newark (*Pamph. L.* 1873, *p.* 246) provides that "the clerk of each of said courts shall be appointed by the judge thereof, and shall hold his office until the appointment of his successor."

The appointment of the defendant was by legal authority, if the provision recited was in force at the time of his appointment.

The relator is "an honorably discharged Union soldier, having served in the war of the rebellion," and because of that fact, and of the legislation in the state respecting persons so conditioned, it is claimed in his behalf that the tenure of office under his appointment was extended, and that the power of the judge to make a successive appointment against the relator's will was limited in its exercise until the relator, for good cause and after trial, should be adjudged unfit for

the office.   In other words, that the enactments referred to· had changed his term into a holding during good behavior.

Three statutes on the subject referred to have been enacted by the legislature under substantially the same title.   The first was passed April 6th, 1888, and is entitled "An act in regard to honorably discharged Union soldiers."   *Pamph. L.,. p.* 135.

The second was passed April 9th, 1889, and entitled "An act in regard to honorably discharged Union soldiers and sailors holding public office or position."   *Pamph. L., p.* 231.. The first section of this act is of these words :   " No person holding or hereafter holding a public office or position under the government of any city or county of this state, whose· term of office is not fixed by law, and who receives a salary from the city or county, and who is an honorably discharged Union soldier or sailor having served in the war of the re-- bellion, shall be removed from such office or position except for good cause shown after hearing, but such person shall hold his office during good behavior, and shall not be removable for political or partisan reasons."

The last of these acts bears date March 9th, 1891, and enacts that " no person *now* holding an appointive position in any city or county of this state, and receiving a salary from such city or county, who is an honorably discharged soldier or sailor, having served in the war of the rebellion, shall be· removed from such position except for cause," &c.

The claim of the relator set· up in the information must. rest upon the force and validity of the enactments just recited..

The act of 1888 needs no further reference, except to say that the entire subject embraced in its provisions was covered and enlarged by the enactment of 1889, which was in substi-- tution of the former and contained a general clause of repealer.

The question then to be solved is, whether the relator is. secured from displacement in office by the provisions of the· two later enactments, or either of them.

By the terms of the act of 1889 the class of persons therein described are secured against removal, without just cause, from

any office or position held by them under the government of any city or county, except where the term of official holding is fixed by law. This provision certainly embraces any office or appointive position of an official quality, not limited in its term, which the governing agencies of the municipality have by charter or general law authority to fill, and it may, and probably does, embrace all offices and official positions unlimited in tenure, regardless of the method of appointment, that are designed as agencies in the government of the designated municipalities.

But can it be successfully contended that within the words of the act, under any construction that can possibly be given to them, offices of a judicial establishment like that of a District Court can be included? Can the District Court in any sense be regarded as an institution under the municipal government of the city? True, by the law creating the court, it can have existence only in certain cities, and its jurisdiction is, to some extent, bounded by the city limits, but neither the court nor its clerk is in anywise concerned in municipal administration. The city and its officers belong to a department of government quite different from that in which the District Court has its place. One is an administrative agency of the state over territory assigned to it, and the other is part of the judicial power of the state.

That the city is charged with the payment of the salaries of both the judge and the clerk does not serve to characterize the office as a municipal office. Both the judge and his clerk have their appointment from the state; the judge directly, his clerk indirectly from the judge, and it would be immaterial in giving character to the office whether the legislature had directed their salaries to be paid out of the state, county or city treasury. It was clearly within the power of the legislature to enforce either mode of making compensation. The District Court has, I think, no relationship with municipal government. Its functions are judicial, not in any sense administrative. The municipality may be a suitor in the court, and be bound by its judgments. The government of

the city may be ,changed or abolished and a new form of government set up, and the court still remain with its power and duties unimpaired. There is nothing in the office of clerk that has closer affinity with the city.

I think it is plain that the office of clerk of District Court is not within the class of offices intended in this act. It concerns those only who hold appointment to offices and positions *quasi* official and are engaged as agencies in the administration of municipal government.

We have not stopped to consider the question whether the office of clerk of the District Court is within the exception in this statute which excludes from its operation those whose term of office is fixed by law. If, under the charter, the holding had been for a definite period of time, there would have been no room for doubt on this question. In this instance the term expires on the appointment of a successor. Where one holds for a certain period of time, and until another is appointed in his stead, a period is put to the term by the appointment of a successor, and it may, perhaps, with good reason, be argued that in this case the term ends with the event of the appointment of a successor, and consequently no removal but a cessation of office transpires when said successor is appointed. It is not necessary, nor is it intended to decide this question.

Let us next look at the act of 1891, and see whether, under that statute, the case of the relator is improved. It is claimed that this act is more comprehensive, and includes the office in question. It is couched in different phrase from that employed in the legislation of 1889 above considered. But I think it does not differ in meaning in respect to the offices intended to be affected by it. The office designated is an appointive position in any city or county of this state, but these words serve as well to describe in a general way the offices and positions more specifically indicated in the other acts upon this same subject.

Words in an act are ordinarily to be understood in the sense in which they are commonly used.

Thus, a person is often spoken of as holding an office in a city or in a county, intending to express thereby that he is in some position under the city or county government. It seems to me to be quite unreasonable to contend that in the use of these words the legislature had in mind the mere residence of the officer and not the relation of the office to the city or county as a public corporation.

Our attention is further called to the fact that this enactment, by its terms, fails to exclude from its operation offices having a fixed certain tenure. And from this frame of the law we are urged to conclude that all definite terms of office are, when held by a person of the designated class, changed into an indefinite term, or a holding during good behavior.

I am quite unwilling to concede that the language employed in this law would have the effect to repeal any act of the legislature which affixed to an office a definite period of holding. In the act in question it is *removal* from office that is interdicted, and in this term there is not embraced the idea of a termination of an official term by operation of law.

But it is needless, and it may be irrelevant, to discuss the particular provisions of this statute, for the reason that the act must be held void on constitutional grounds.

This is beyond question an act regulating the internal affairs of " towns and counties, and any enactment having such purpose must, under the provisions of the amended constitution, be a general law." *Passaic* v. *Stevenson*, 17 *Vroom* 173.

Now while this quality may exist in a classification of objects whose peculiar condition and necessity present reasonable ground for legislation touching such peculiarities, yet such law must not only present a proper grouping of objects —it must also be general, include within its provision all the members which constitute the selected group or class. All the decided cases are to this effect.

Conceding that honorably discharged Union soldiers and sailors, who fought in the rebellion, constitute a class, in behalf of which protective legislation is permissible, such

legislation having been enforced in this court without question. *Lewis* v. *Jersey City*, 22 *Vroom* 240.

This law is hopelessly void because only those members of the designated body of men who held office at the time of the passage of the act are given the benefit of its provisions.

The great body of this deserving class of our citizens is shut out from its benefits. Any reason for this is beyond conjecture. The act is special and consequently void.

The case then rests upon the provisions of the act of 1889. And we are of the opinion that the office in question is not within the purview of that law.

The demurrer to the information must therefore be sustained.