## LUCAS v. KING.

No. 6944.   Opinion Filed Feb. 13, 1917.

Rehearing Denied May 29, 1917.

(165 Pac. 165.)

(Syllabus by the Court.)

**Replevin — Judgment — Sufficiency of Evidence.**

Record examined, and held that the court is unable to find sufficient satisfactory evidence to support the verdict of the jury.

Error from District Court, Grady County; Frank M. Bailey, Judge.

Replevin by J. E. Lucas against W. C. King. Judgment for defendant, motion for new trial overruled, and plaintiff brings error. Reversed and remanded, with directions to grant a new trial.

Riddle & Hammerly and Warren K. Snyder, for plaintiff in error.

Bond, Melton & Melton, for defendant in error.

KANE, J. This was an action in replevin, commenced by the plaintiff in error, plaintiff below, against the defendant in error, defendant below, for the recovery of certain specific personal property of the aggregate value of $2,234 and for damages for the wrongful detention thereof in the sum of $2,500. The petition, bond, and affidavit in replevin were in the usual form, the plaintiff alleging that he was the owner of and entitled to the immediate possession of the property involved, which consisted of about 14 head of live stock, 3 sets of harness, 1 wagon, and 7 collars. After the petition, affidavit, and bond in replevin were filed by the plaintiff, the defendant gave a redelivery bond, and in due time filed his answer, which alleged, in effect, that the plaintiff at one time held a mortgage on said personal property to secure a certain indebtedness aggregating $2,100, but that this indebtedness had long since been paid in the following manner. Then follows what purports to be a statement of mutual accounts existing between the plaintiff and defendant, which showed the plaintiff to be indebted to the defendant in the sum of $1,000, for which sum the defendant prayed judgment, together with his costs. To this answer the plaintiff replied, denying generally and specially the allegations thereof, and alleging that the defendant was indebted to the plaintiff in a large sum; that the chattel mortgage mentioned by the defendant in his answer had been foreclosed in the manner provided by law, and the property therein described sold at mortgage sale for a sum much less than the amount due said plaintiff from said defendant, and the proceeds applied pursuant to its terms; that at said sale the plaintiff became the purchaser in good faith of the personal property described in said chattel mortgage, and thereby became the owner thereof. Upon trial to jury there was a verdict in favor of the defendant, which, omitting the caption, reads as follows:

"We, the jury, impaneled and sworn to try the issues involved in the above-entitled cause, do upon our oaths find for the defendant and fix the amount of his recovery at

the sum of $500.00, and for the retention of all property sued for in this cause."

After overruling the motion for new trial filed by the plaintiff, the court entered judgment upon the verdict, to reverse which this proceeding in error was commenced.

Counsel for the plaintiff state their grounds for reversal in their brief as follows: (1) That the verdict of the jury and judgment of the court are contrary to law; and (2) that the verdict of the jury and judgment of the court are wholly unsupported by and contrary to the uncontradicted evidence.

As we view the record, it presents no question of law whatever for review. The record shows that the pleadings were not challenged by demurrer or otherwise, and that after all the evidence was in and the case closed, the court instructed the jury as to the law of the case upon the issues joined by the pleadings and the evidence without objection or exception by either party. It is true that the action of replevin has for its primary object the recovery of specific personal property, and an ordinary judgment for a sum of money is not responsive to the issues raised (Cobbey on Replevin, sec. 1147); but the parties to this proceeding, as we have seen, treated it more in the nature of a suit for the adjustment of mutual accounts than an ordinary action in replevin, and so we shall treat it in examining the remaining assignment of error.

To meet the contention that the verdict of the jury is not sustained by the evidence, counsel for defendant in their brief present a statement showing certain credits as being established by the evidence in favor of their client, and say that the allowance of these claims more than justifies the verdict of the jury. As there was no attempt to state an account between the parties, of course, we are unable to say just what credits were allowed by the jury, or what claims they rejected. But, looking upon the case from the standpoint of the defendant, we are unable to find satisfactory support in the evidence for many of the items of credit which counsel contend are established. In view of the fact that it will be necessary to reverse the cause for a new trial, and that upon a retrial the pleadings and issues may be so revised as to present merely an ordinary action in replevin for consideration, which, of course, would greatly simplify the case, we deem it necessary to note but three of the larger credits which, in our judgment, are not supported by the evidence.

One of the credits which counsel claim is established by the evidence is designated in their brief as follows:

"Total value of property sold and converted by Lucas for which King is entitled to credit, $5,563.50."

A large part of the property included in this item consisted of the personal property covered by the chattel mortgage hereinbefore mentioned, and came into the possession of the plaintiff in substantially the following manner: One Arnote held a chattel mortgage against this property which he was about to foreclose. To save foreclosure the plaintiff purchased the Arnote note and mortgage under the following agreement with the defendant, as related by the latter: Mr. Lucas was to take possession of all the live stock and sell the jack and stock horses and apply the proceeds in payment of the Arnote note, retaining the work animals to do certain contract work, leaving the defendant enough teams on the farm to do farm work with, which teams he was also to use on contract work with his brother, when he had no work on the farm for them to do. In pursuance of this agreement Mr. Lucas took possession of the live stock. Upon the defendant taking the necessary work animals back to his farm, to be used in pursuance of his agreement with Lucas, they were seized by a Mrs. Holder, who held a second chattel mortgage upon the property covered by the Arnote mortgage. At this point Mr. Lucas said to the defendant, according to the testimony of the latter:

" 'We have got to sell all this stuff and stop this litigation,' and I said, 'All right, John; anything goes with me.' "

In pursuance of this conversation the personal property covered by the Arnote mortgage was all sold pursuant to the terms of the mortgage, at which sale the plaintiff became the purchaser for the sum of $800, which sum was credited upon the Arnote note, leaving a balance of several hundred dollars still unpaid. Right here there occurred the first serious disagreement between the parties. The plaintiff contends that the sale pursuant to the Arnote note and mortgage was a bona fide sale, and that he credited the Arnote note with the $800, and that that was the end of that transaction in so far as the ownership of the live stock and other property covered by the mortgage is concerned. We find nothing in the record which directly negatives this contention; whilst, on the other hand, the evidence of the plaintiff tends to confirm it. From the part of the defendant's testimony above set out it might fairly be inferred that upon finding

the first agreement to be impracticable on account of the second chattel mortgage of Mrs. Holder, Lucas and King entered into a new agreement whereby the property was to be sold under the first, or Arnote, chattel mortgage. "Lucas says," testified the defendant, " 'We have got to sell all this stuff and stop this litigation,' and I said, 'All right, John; anything goes with me.' " But even if we assume that the jury might have inferred from the foregoing testimony of the defendant that the sale pursuant to the Arnote note and mortgage was a mere subterfuge to shut off the second mortgagee, who had seized the property, and that the original agreement was to stand, notwithstanding the foreclosure of the Arnote mortgage, yet Lucas ought not to be charged with the value of the property as in conversion. In other words, instead of allowing the defendant the reasonable market value of the property covered by the Arnote mortgage, as counsel assumes the court and jury did, the defendant would be entitled only to have credit for the amount Lucas received for the property upon a sale thereof in good faith; for, testifies the defendant, "Mr. Lucas was to sell the jack and stock horses and apply the proceeds to my note." In either of the foregoing circumstances it would be manifestly unfair to the plaintiff to charge him with the conversion of this property. We also are unable to find in the record any satisfactory evidence which entitled the defendant to receive a credit of $2,284.85 on account of the transaction which, for identification, will be called the "Butler work," the "Strong City work," the "Rock Island work," "county road work," "Herring and Young work," and the "work at Oklahoma City." And the same may be said of the credit which counsel refer to in their brief as follows:

"He further testified that he paid the balance due on a note and mortgage to one J. E. Brown amounting to about $600," etc.

On the whole case, we are constrained to say that the trial of a replevin case before a jury is a most unsatisfactory method of stating and settling intricate mutual accounts covering a long period of time. If the parties continue to treat this cause as a suit for an accounting, it should be tried as such and complete findings made which would enable this court on review to ascertain with some degree of certainty the specific items of account found to be established by the evidence.

For the reasons stated, the judgment of the court below is reversed, and the cause remanded, with directions to grant a new trial.

All the Justices concur.