ROMEO DeVITA, PLAINTIFF-APPELLANT, v. HOUSING
AUTHORITY OF THE CITY OF PATERSON AND WIL-
LIAM BENTELE, DEFENDANTS-RESPONDENTS.

Argued January 10, 1955—Decided January 31, 1955.

*Mr. Saul M. Mann* argued the cause for the appellant.

*Mr. Ervan F. Kushner* argued the cause for the respondents (*Mr. Harry Zax,* attorney).

The opinion of the court was delivered by

JACOBS, J.   The Appellate Division, in an opinion reported in *DeVita v. Housing Auth. of Paterson,* 31 *N. J. Super.* 394 (1954), held that the plaintiff's indefinite appointment as secretary-treasurer and executive director of the Housing Authority of the City of Paterson did not give him the benefits of the Veterans' Tenure Act; it accordingly affirmed the summary judgment which the Law Division had entered in favor of the authority.   We granted certification under *R. R.* 1:10–2.   See 16 *N. J.* 207 (1954).

The Paterson Authority was created by municipal resolution in 1941 pursuant to the provisions of the Local Housing Authorities Law.   See *L.* 1938, *c.* 19; *N. J. S. A.* 55:14A–1 *et seq.*   That act declared the urgent public need for the construction of housing projects for persons of low income and was designed to implement the far-reaching national housing program which contemplated federal loans and subsidies to local public housing agencies. 42 *U. S. C. A.* § 1401 *et seq.*; *Tretter, Public Housing Finance,* 54 *Harv. L. Rev.* 1325, 1329 (1941).   Its constitutionality was readily sustained in *Romano v. Housing Authority, Newark,* 123 *N. J. L.* 428 (*Sup. Ct.* 1939), affirmed 124 *N. J. L.* 452 (*E. & A.* 1940), where the court recognized the intimate relationship between decent housing and the public welfare and upheld vital provisions of the act as proper exercises of the police power.   See *Ryan v. Housing Authority of Newark,* 125 *N. J. L.* 336, 343 (*Sup. Ct.* 1940) ; *Con Realty Co. v. Ellenstein,* 125 *N. J. L.* 196, 200 (*Sup. Ct.* 1940).   *Cf. Robinson and Weinstein, The Federal Government and Housing,* 1952 *Wis. L. Rev.* 581, 583; *Foley, Low-Rent Housing and State Financing,* 85 *U. of Pa. L. Rev.* 239, 251 (1937) ; *Gillette, Public Housing in New Jersey,* 64 *N. J. L. J.* 541 (1941).

Paragraph 5 of the act (*L.* 1938, *c.* 19, *p.* 69; *N. J. S. A.* 55:14*A*–4) set forth that the governing body of any municipality may, by resolution, create a local housing authority and that it "shall constitute an agency and instrumentality of the municipality" creating it. It also prescribed that five persons shall be designated as commissioners of the authority and that their terms shall be one, two, three, four and five years, respectively. The term of each succeeding commissioner was fixed at five years, with any vacancy being filled for the unexpired term. Paragraph 7 of the act (*L.* 1938, *c.* 19, *p.* 72; *N. J. S. A.* 55:14*A*–6) set forth that the authority may employ a secretary (who shall be executive director) and other employees and officers and "shall determine their qualifications, duties and compensation." No fixed term for the secretary was prescribed in the act and the statutory power to determine his qualifications, duties and compensation did not expressly include his term. Paragraph 8 of the act set forth that the authority "shall constitute a public body corporate and politic, exercising public and essential governmental functions" and that its powers shall include that of making, amending and repealing "bylaws, rules and regulations, not inconsistent with this chapter." *L.* 1938, *c.* 19, *p.* 73; *N. J. S. A.* 55:14*A*–7. The authority did adopt by-laws which provided in section 1 that its officers shall be a chairman, a vice-chairman, and a secretary-treasurer; in section 4 that the secretary shall be the executive director and, as such, have general supervision over the administration of its business and affairs, subject to the direction of the authority; in section 6 that any person appointed to fill the office of secretary "shall have such term as the Authority fixes"; and in section 7 (as it appeared in the authority's appendix) that vacancies shall be filled as follows:

"Should the offices of the Chairman or Vice Chairman become vacant, the Authority shall elect a successor from its membership at the next regular meeting and such election shall be for the unexpired term of said office. When the office of Secretary-Treasurer

354

becomes vacant, the Authority shall elect a successor from its membership at the next regular meeting and such election shall be for the unexpired term of said office. When the office of Secretary-Treasurer becomes vacant, the Authority shall appoint a successor, as aforesaid."

On March 31, 1942 John E. Quinn was appointed as acting-executive director "at the will of the Housing Authority and until such time as a permanent Executive Director is appointed." On May 26, 1942 James D. Ward was employed as secretary for a period of one year. On May 13, 1943 George Brooks was appointed executive director without any stated term of office. On February 13, 1951 the authority adopted a resolution which stated that whereas the offices of secretary and treasurer had become vacant due to the death of George Brooks, and whereas it was necessary that a successor be appointed:

"Now, THEREFORE, BE IT RESOLVED by the Commissioners of the Housing Authority of the City of Paterson that Romeo T. DeVita be and he hereby is appointed Treasurer of the Housing Authority of the City of Paterson, and that he be and hereby is selected, appointed and employed as Secretary of the Housing Authority of the City of Paterson effective February 15, 1951, and that in such capacity, he performs all the duties of Treasurer, Secretary and Executive Director in compliance with the by-laws of the Housing Authority of the City of Paterson, statutes of the State of New Jersey, and the rules and regulations of the Public Housing Administration."

The aforesaid resolution appointing the plaintiff Romeo DeVita did not seek to fix any definite term of office and he continued to serve as secretary-treasurer and executive director until the authority adopted a resolution terminating his services "effective December 15, 1953." No charges were ever made against the plaintiff nor was he ever given a hearing; he is a disabled veteran, having served in World War II from August 25, 1942 to January 29, 1946 when he was honorably discharged, and he claims the protection of the Veterans' Tenure Act. *R. S.* 38:16–1; *R. S.* 38:23A–3.

*R. S.* 38:16–1 affords veterans' tenure protection to state, county and municipal officers and employees whose

terms of office are not "fixed by law"; such officers and employees may not be removed "except for good cause shown after a fair and impartial hearing." The underlying policy is of long standing and has been dealt with repeatedly in our courts. If a definite term of the veteran's office or employment has been legislatively fixed by statute, or must be fixed in accordance with statutory direction, or has been fixed in accordance with statutory delegation, then the tenure provisions are inapplicable (*cf. Talty v. Board of Education, Hoboken,* 10 *N. J.* 69, 71 (1952)); otherwise they are controlling and are not to be whittled away. See *Stewart v. Freeholders of Hudson,* 61 *N. J. L.* 117, 119 (*Sup. Ct.* 1897), where the court sustained the veteran's tenure claim of a deputy warden whose term of office was not fixed by statute or pursuant to its direction or delegation but was nevertheless fixed by a resolution of the county board of freeholders; in the course of his opinion Justice Dixon said:

"We also think that the resolution mentioned goes beyond the authority of the board in its attempt to limit the relator's appointment to one year. The act of March 14, 1895, defines the tenure by which all such positions are to be held, when the incumbents are persons of the character therein described, and the term is not otherwise fixed by the laws of the state. It not only forbids the removal of such persons except for good cause shown, after a fair and impartial trial, and declares that political reasons shall not constitute good cause; but it affirmatively ordains that they shall hold their positions during good behavior, and so prevents the appointing power from setting any other bound to the duration of the incumbency. Thus, every office or position under the government of the state, or of any county or city, when occupied by one of these favored citizens, is held either for a term fixed by the law of the state, or during the good behavior of the incumbent. This clause of the statute we regard as establishing a legislative policy which cannot be thwarted by the simple device of making appointments for a specified term. The various bodies and officers empowered to fill these places may fill them or not, as they choose, with honorably discharged Union soldiers, sailors, or marines; but, if they do so fill them, they can exact from their appointees no stipulation which will defeat the legislative design that the incumbency shall continue during good behavior. As well might they attempt to provide that the posts should become vacant when the political complexion of the appointing power should change."

356

See also *Greene v. Hudson County Board of Health,* 19
*N. J. Super.* 453 (*Law Div.* 1952); *Kessler v. Minard,* 134
*N. J. L.* 583 (*Sup. Ct.* 1946); *Fox v. Board of Education
of Newark,* 129 *N. J. L.* 349 (*Sup. Ct.* 1943), affirmed 130
*N. J. L.* 531 (*E. & A.* 1943); *Sheridan v. McCurnin,* 124
*N. J. L.* 493 (*Sup. Ct.* 1940).

The Appellate Division took the position that the only
proper and legal appointment of secretary-treasurer and
executive director of the Paterson Housing Authority "was
one designating a term" (*DeVita v. Housing Auth. of Pater-
son, supra,* 31 *N. J. Super.,* at *page* 401) and that conse-
quently the Veterans' Tenure Act had no applicability. We
have reached a contrary conclusion. As we read the statute
which authorized the creation of local housing authorities,
there was no legislative contemplation that their secretaries-
executive directors would be appointed for fixed terms. The
terms of the commissioners were fixed in the legislation which
also expressly authorized the appointment of a secretary-
executive director. But no mention of any fixed term for the
secretary-executive director is found in the legislation, and
the general provision which bears on the commissioners'
power to determine his qualifications, duties and compensa-
tion significantly omits mention of any term. It seems to
us that the Legislature contemplated that although the com-
missioners were to have fixed terms, appropriately staggered
to insure uninterrupted functioning, the secretary-executive
director, who would be the managing official for the authority,
would hold office without stated term. Thus his office would
be terminable at the will of the commissioners unless he came
within the independent protection of pertinent civil service
or tenure provisions.

The Appellate Division considered the authority's
by-laws to be controlling and construed them as requiring that
the secretary-executive director hold office for a definite
rather than an indefinite term. We have already indicated
our view that, although the Legislature had delegated general
power to adopt by-laws, this power did not extend to the

fixing of a definite term of office for the secretary-executive director. Furthermore, we are not at all convinced that the by-laws intended to prescribe a definite term as a requisite to the appointment. The by-laws provided that the appointee "shall have such term as the Authority fixes"; it may well be that the authority contemplated that the term could be definite or indefinite as it chose to fix in each instance and, indeed, its practice was to that effect. Thus, Mr. Ward was appointed in 1942 for the term of one year; however, his successor, Mr. Brooks, was appointed for an indefinite term and served from 1943 to 1951; and his successor, the plaintiff DeVita, was likewise appointed for an indefinite term and served from 1951 until his dismissal in 1953. This administrative interpretation by the authority of its own by-laws is entitled to considerable weight. See *Bowles v. Seminole Rock & Sand Co.*, 325 *U. S.* 410, 414, 65 *S. Ct.* 1215, 89 *L. Ed.* 1700, 1702 (1945); *Davis, Administrative Law* 910 (1951). *Cf. Passarella v. Board of Commissioners*, 1 *N. J. Super.* 313, 320 (*App. Div.* 1949); *Cino v. Driscoll*, 130 *N. J. L.* 535, 540 (*Sup. Ct.* 1943). In pronouncing a different interpretation, the Appellate Division relied in part on the second sentence in section 7 to the effect that when the office of secretary-treasurer becomes vacant the authority shall elect a successor from its membership and that such election shall be for the "unexpired term." However, the plaintiff was not elected from within the membership of the authority but was appointed under the concluding sentence of section 7; and his appointment for an indefinite term was made under the seeming power afforded by section 6 which provides that it shall be "for such term as the Authority fixes." Furthermore, we have been advised by counsel for the authority that although the second sentence in section 7 appeared in the appendices submitted to both the Appellate Division and this court, its inclusion was inadvertent since it was not embodied in the original by-laws of the authority, certified as such to the Public Housing Administration. In any event, we are satisfied that the appointment

was lawfully made for a term not "fixed by law" within the intendment of *R. S.* 38:16-1 and that the Appellate Division's ruling to the contrary was erroneous. See *Mathis v. Rose*, 64 *N. J. L.* 45 (*Sup. Ct.* 1899), affirmed 64 *N. J. L.* 726 (*E. & A.* 1900); *Uffert v. Vogt*, 65 *N. J. L.* 621 (*E. & A.* 1901). Although the case of *McGrath v. Bayonne*, 85 *N. J. L.* 188 (*E. & A.* 1913), is relied upon by the respondents, we do not consider it pertinent. The matter is largely one of legislative intent to be gathered from the language and plan of the particular statute under consideration. In the *McGrath* case the court construed the enabling legislation as broadly empowering the city to create the position of assistant building inspector and to fix (as it did) a definite term therefor; in the instant matter, the enabling legislation has been construed as not embodying comparable legislative delegation and the appointment was actually made for an indefinite term.

The respondents advance the additional contention that even though the plaintiff's term of office was not fixed by law he was not protected by the Veterans' Tenure Act because he was neither employed by the municipality nor (see *R. S.* 38:23A-3) "engaged in the public service in any of its branches within this State." *R. S.* 38:16-1 refers generally to persons holding office or employment under the government of the State or any county or municipality and receiving a salary therefrom. In *Brickett v. Lagay*, 134 *N. J. L.* 1 (*E. & A.* 1946), the court was called upon to determine whether Brickett, a river inspector employed by the Passaic Valley Sewerage Commissioners, was within the class of persons referred to in *R. S.* 38:16-1. It held that he was not, on the ground that the Veterans' Tenure Act (*R. S.* 38:16-1) did not encompass employees of an independent public agency such as the Passaic Valley Sewerage Commissioners. However, while the *Brickett* case was pending the Legislature passed chapter 175 of the *Laws of* 1945 which provided that whenever any law grants veterans' tenure or other benefits to persons employed by the State, county or

municipal government "such persons shall include all those engaged in the public service in any of its branches within this State." The statute provided further that "no distinction shall be made by reason of the source of the public funds from which such person is paid or the changes in or from the governmental office, position or employment to any other branch of the government within this State." It seems clear to us that by its enactment of *L.* 1945, *c.* 175 (*N. J. S. A.* 38:23A-3) the Legislature intended to include within the protection of *R. S.* 38:16-1, officers and employees of governmental agencies within the State, whether they be employed strictly by the State or a county or municipality or broadly by a state, county or municipal instrumentality or agency engaged in the discharge of a public function. We regard as entirely groundless the respondents' suggestion that *L.* 1945, *c.* 175 was apparently enacted "solely for the benefit of the employees of the Passaic Valley Sewerage Commission." The Brickett dismissal undoubtedly focused attention on the fact that in the Veterans' Tenure Act the Legislature may have neglected to extend protection to employees of independent governmental agencies such as the Passaic Valley Sewerage Commissioners, but there is no basis for believing that in its corrective action the Legislature intended to protect such employees and exclude others comparably situated. Indeed, the introducer's statement attached to the bill which became *L.* 1945, *c.* 175, expresses its purpose as being to effectuate the legislative policy that veterans' protection "should be general and apply equally to all veterans and not to any individual or group"; and in the legislation itself there could have hardly been more appropriately comprehensive language than the phrase "all those engaged in the public service in any of its branches within this State." See *State v. McCall*, 14 *N. J.* 538, 545 (1954).

We have no doubt that officers and employees of the Paterson Housing Authority are engaged in the public service within *L.* 1945, *c.* 175. Under the unequivocal terms of the Local Housing Authorities Law the authority is "an agency

and instrumentality" of Paterson. Its work is admittedly public in nature and in furtherance of the municipal welfare. See *Taylor v. Leonard*, 30 *N. J. Super.* 116, 119 (*Ch.* 1954); *Ryan v. Housing Authority, Newark, supra*, 125 *N. J. L.*, at *page* 344; *Con Realty Co. v. Ellenstein, supra*, 125 *N. J. L.*, at *page* 200; *Romano v. Housing Authority, Newark, supra*. It is, of course, a separate entity with statutory powers independent of the municipality, but as expressed in *Stark v. Fell*, 124 *N. J. L.* 475, 478 (*Sup. Ct.* 1940), it is nonetheless engaged in a "municipal function." *Cf. State v. Clark*, 15 *N. J.* 334, 340 (1954); *Behnke v. New Jersey Highway Authority*, 13 *N. J.* 14, 27 (1953). We find nothing in the pertinent legislation or in considerations of social policy which suggests that its officers and employees are to be differentiated from other persons engaged in the public service at the municipal or higher levels and receiving the protection of veterans' tenure. Although the respondents have suggested that the granting of tenure to the secretary-executive director might perhaps impair the authority's relations with the Federal Government, we find no supporting basis. The authority has duly entered into a contract under which the Public Housing Administration (see 42 *U. S. C. A.* § 1401 *et seq.*) has agreed to make contributions to the authority for its housing projects, but we find nothing in its terms which in anywise bears on the subject at hand. Indeed, at the oral argument counsel conceded that nothing in the federal legislation or the contributions contract purports to vest in the Public Housing Administration any measure of control in the appointment of the authority's secretary-executive director or the fixing of his tenure. These matters are appropriately left to state legislation and official action by the authority pursuant thereto. *Cf. Banks v. Housing Authority*, 120 *Cal. App. 2d* 1, 260 *P. 2d* 668 (1953), *certiorari* denied, 347 *U. S.* 974, 74 *S. Ct.* 784, 98 *L. Ed.* 1114 (1954).

The respondents have placed reliance on several decisions in our lower courts which do not, however, bear directly on the subject before us. See *State v. Parking Authority of the*

*City of Trenton,* 29 *N. J. Super.* 335 (*App. Div.* 1954); *Carluccio v. Ferber,* 18 *N. J. Super.* 473, 477 (*App. Div.* 1952); *Monte v. Milat,* 17 *N. J. Super.* 260 (*Law Div.* 1952). In the *Parking Authority* case the Appellate Division held that employees of the Trenton Parking Authority were not entitled to civil service protection. Under specific statutory provisions, local housing authority employees are generally within the classified civil service and the secretary-executive director is apparently in the unclassified civil service with the tenure protection afforded by *N. J. S. A.* 55 :14A– 6.3. See *DeVita v. Housing Auth. of Paterson, supra,* 31 *N. J. Super.,* at *page* 398. However, in the instant matter, the plaintiff has advanced no civil service claim but has confined his claim (which we have determined to be valid) to veterans' tenure under *R. S.* 38 :16–1 and *N. J. S. A.* 38 :23A–3. In the *Carluccio* case the Appellate Division held that a motor vehicle agent was not entitled to veterans' tenure, on grounds which are wholly inapplicable here. It found that the agent was not a person receiving a salary within the contemplation of *N. J. S. A.* 38 :23A–3 and that his position was "terminable at the pleasure" of the Director of Motor Vehicles under the express provisions of *R. S.* 39 :3–3. In the *Milat* case the Law Division expressed the view that although the housing authority was designated by the Legislature as an agent and instrumentality of the municipality, it was not a "subordinate branch, department or body" within the meaning of *R. S.* 40 :73–5 which was designed to prohibit certain municipal appointments between designated dates in an election year. The interpretation of *R. S.* 40 :73–5 has neither been briefed nor argued and is not in issue before us; we express no opinion on the matter. See *Higgins v. Krogman,* 142 *N. J. Eq.* 691, 694 (*E. & A.* 1948).

Reversed.

*For reversal*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, WACHENFELD, BURLING, JACOBS and BRENNAN—7.

*For affirmance*—None.