31 N.J. 339 (1960)
157 A.2d 306
DANIEL MIELE, JR., PLAINTIFF-RESPONDENT AND CROSS-APPELLANT,
v.
JOSEPH McGUIRE, ET AL., DEFENDANTS-APPELLANTS AND CROSS-RESPONDENTS.
The Supreme Court of New Jersey.
Argued October 27, 1959.
Decided January 11, 1960.
*341 Mr. Philip J. Mylod argued the cause for the plaintiff-respondent and cross-appellant (Messrs. Mylod & Mylod, attorneys; Mr. James P. Mylod, of counsel).
Mr. Thomas E. Durkin, Jr., argued the cause for the defendants-appellants and cross-respondents (Mr. William J. Gearty, on the brief).
Mr. John Tomasin filed a brief amicus curiae for the Department of New Jersey, Disabled American Veterans.
The opinion of the court was delivered by JACOBS, J.
The Law Division sustained the plaintiff's claim of tenure under the Veterans' Tenure Act (N.J.S.A. 38:16-1) and ordered his reinstatement but without any back pay. It rejected the defendants' contention that the Korean conflict was not a war within the meaning of the act and that the plaintiff, as a veteran of that conflict, was not entitled to the act's protection. The defendants appealed from the order of reinstatement, the plaintiff cross-appealed from the refusal to allow back pay, and we certified on our own motion. In support of their appeal the defendants' brief again raises the point that the Korean conflict was not a war within the meaning of the Veterans' Tenure Act but on that issue we are in complete agreement with the Law Division's determination and the supporting reasons which are expressed in its comprehensive opinion reported in Miele v. McGuire, 53 N.J. Super. 506 (Law Div. 1959). The only additional point raised in the defendants' brief *342 in support of their appeal is an attack on the Veterans' Tenure Act as violative of the terms of Article IV, Sec. 7, par. 7 of the New Jersey Constitution which provides that "No general law shall embrace any provision of a private, special or local character." That point was not discussed in the opinion of the Law Division presumably because it was not raised there. See City of Newark v. Pulverman, 12 N.J. 105, 108 (1953). On his cross-appeal the main point raised by the plaintiff is that since he held an employment or position rather than an office (see De Marco v. Board of Chosen Freeholders of Bergen County, 21 N.J. 136 (1956); Winne v. Bergen County, 21 N.J. 311 (1956)) he was, upon reinstatement, entitled to back pay under Ross v. Board of Chosen Freeholders of Hudson County, 90 N.J.L. 522 (E. & A. 1917). Here again the precise point was not discussed in the opinion of the Law Division because it was not raised there although the plaintiff did urge that he was entitled to back pay under N.J.S.A. 40:46-34 and N.J.S.A. 38:23A-3. See Miele v. McGuire, supra, 53 N.J. Super., at pages 515-517.
The Veterans' Tenure Act states that no veteran now holding or hereafter appointed to any employment, position or office, whose term of employment, position or office "is not now fixed by law" shall be dismissed except for good cause. The defendants' contention is that whereas the phrase "not fixed by law" would have been proper, the phrase "not now fixed by law" was improper because it excludes all veterans holding positions "created after" the passage of the act as well as all veterans holding, at the passage of the act, fixed term positions which were thereafter "changed so as to be not fixed by law." The defendants urge that this type of closed classification constitutes special legislation which is violative of Article IV, Sec. 7, par. 7 of the Constitution. See Pierson v. O'Connor, 54 N.J.L. 36 (Sup. Ct. 1891); Bumsted v. Henry, 74 N.J.L. 162 (Sup. Ct. 1906), affirmed 74 N.J.L. 790 (E. & A. 1907); but cf. Addiss v. Logan Corporation, 23 N.J. 142, 147 (1957) *343 commented upon in Heckel, "Constitutional Law," 13 Rutgers L. Rev. 17, 30 (1958); In re Freygang, 46 N.J. Super. 14, 24 (App. Div. 1957), affirmed 25 N.J. 357 (1957).
In Chapter 104 of the Laws of 1888 the Legislature provided for tenure for Civil War veterans holding city or county positions for terms "not now fixed by law." In Lewis v. Jersey City, 51 N.J.L. 240 (Sup. Ct. 1889) the court held that this act applied to the holders of offices and positions but not to the holders of employments. See Glasser, "A New Jersey Municipal Law Mystery: What is a `Public Office?'," 6 Rutgers L. Rev. 503 (1952). The court was not called upon to consider the meaning of the phrase "not now fixed by law" but in the course of its opinion Justice Depue stated that the act was designed to benefit persons holding a position "whose `term of office' is not fixed by law." He seemingly considered that the language of the act could be read as of the time of its application rather than solely as of its passage; other courts have expressed the same view. See Larson v. American Title & Insurance Co., 52 So.2d 816, 818 (Fla. Sup. Ct. 1951); Arkansas Utilities Co. v. City of Paragould, 200 Ark. 1051, 143 S.W.2d 11, 13 (Sup. Ct. 1940); Protest of Chicago R.I. & P.R. Co., 137 Okl. 186, 279 P. 319, 324 (Sup. Ct. 1929); State ex rel. Brewster, Atty. Gen. v. Mayor and Com'rs of City of Lawrence, 101 Kan. 225, 165 P. 165 P. 826 (Sup. Ct. 1917). In the Larson case the court noted that while the word "now" ordinarily refers to the date of the passage of the statute it may sometimes be given an ambulatory meaning to denote "the moment when, from time to time, the act is read and applied."
In Chapter 59 of the Laws of 1891 the Legislature provided that no Civil War veteran "now holding an appointive position in any city or county" shall be removed except for good cause. This act was declared unconstitutional in Pierson v. O'Connor, supra, 54 N.J.L., at page 42, on the ground that it improperly excluded Civil War veterans who *344 obtained positions after the passage of the act; the court did not consider whether the statute could be construed as ambulatory within the approach seemingly embraced in the Lewis case and expressly adopted in cases such as Larson v. American Title & Insurance Co., supra. In Cavenaugh v. Board of Chosen Freeholders of Essex County, 58 N.J.L. 531, 532 (Sup. Ct. 1896), the court's opinion by Justice Gummere paraphrased the reference in Chapter 155 of the Laws of 1895 to positions whose terms are "not now fixed by law" to mean "not fixed by law"; this was entirely consistent with language in the court's opinion in the Lewis case.
In L. 1907, c. 14 the Legislature adopted the Veterans' Tenure Act which now appears in N.J.S.A. 38:16-1; it was careful to avoid the difficulty dealt with in the O'Connor case by providing that the act shall apply to persons now holding or who may hereafter be appointed to a position or office; it did not alter the phrase "not now fixed by law," perhaps because it had apparently passed muster in the Lewis and Cavenaugh cases. In any event, the many later cases which have dealt with the Veterans' Tenure Act have consistently paraphrased it to refer to employments, positions and offices for terms "not fixed by law" and have not questioned its constitutionality. See Giorando v. Brady, 10 N.J. Misc. 832, 833 (Sup. Ct. 1932); May v. Board of Com'rs. of Town of Nutley, 111 N.J.L. 166, 169 (Sup. Ct. 1933); Grosso v. Erdman, 128 N.J.L. 223, 225 (Sup. Ct. 1942); DeVita v. Housing Authority of City of Paterson, 17 N.J. 350, 355 (1955); Barkus v. Sadloch, 20 N.J. 551, 553 (1956); cf. Gibraltar Factors Corp. v. Slapo, 23 N.J. 459, 463 (1957), appeal dismissed for want of a substantial federal question, 355 U.S. 13, 78 S.Ct. 44, 2 L.Ed.2d 20 (1957), where this Court, in dealing with an attack on the constitutionality of a 1933 statute, had this to say:
"It has long been applied without any question being raised as to its constitutionality. Singer v. Murray Holding Co., 23 N.J. Misc. 24 (Cir. Ct. 1944), affirmed 133 N.J.L. 342 (E. & A. 1945); *345 Blanos v. Eastwood Realty Co., 116 N.J.L. 1 (E. & A. 1935). Cf. Lerman v. Lincoln Novelty Co., 130 N.J. Eq. 144 (Ch. 1941). While that circumstance does not determine the issue it is an important factor which the courts do not ignore. Legg v. Passaic County, 122 N.J.L. 100, 102 (Sup. Ct. 1939), affirmed 123 N.J.L. 263 (E. & A. 1939); Doremus v. Board of Education of Borough of Hawthorne, 5 N.J. 435, 452 (1950), appeal dismissed 342 U.S. 429, 72 S.Ct. 394, 96 L.Ed. 475 (1952). In the Legg case Justice Parker remarked that a fundamental policy of our jurisprudence is not to invalidate a statute which has been in force without any substantial challenge for many years `unless its unconstitutionality is obvious'; even without the lapse of time doubts are always resolved in favor of constitutionality. See McSweeney v. Equitable Trust Co., 16 N.J. Misc. 193, 196 (Sup. Ct. 1938), affirmed 127 N.J.L. 299 (E. & A. 1941), appeal dismissed 315 U.S. 785, 62 S.Ct. 805, 86 L.Ed. 1191 (1942)." 23 N.J., at page 463
We need not concern ourselves further with the question of whether the act would be constitutional if it were deliberately confined to indefinite term offices which were in existence at the time of its passage (cf. Addiss v. Logan Corporation, supra) for we are satisfied that the act must be construed to refer prospectively to offices, positions and employments "not fixed by law." That has been the common understanding and consistent judicial interpretation and the Legislature has never suggested otherwise although it has amended and supplemented the act in other respects on many occasions. See, e.g., L. 1919, c. 124; L. 1922, c. 229; L. 1926, c. 287; L. 1929, c. 29; L. 1936, c. 179; L. 1942, c. 83; L. 1944, c. 249; L. 1945, c. 175. In Barringer v. Miele, 6 N.J. 139, 144 (1951), Justice Case stressed the important bearing of such circumstances on the construction which may properly be placed on a statute:
"In construing a statute it is to be assumed that the legislature is thoroughly conversant with its own legislation and the judicial construction placed thereon. Eckert v. New Jersey State Highway Department, 1 N.J. 474 (1949). The construction of a statute by the courts, supported by long acquiescence on the part of the legislature, or by continued use of the same language, or failure to amend the statute, is evidence that such construction is in accordance with the legislative intent."
*346 Since the defendants have confined their attack on the plaintiff's tenure claim to the two points which have been specifically rejected, we need not discuss at any length our decision today in Brennan v. Byrne, 31 N.J. 333 (1960), where we dealt with an employment under a statute whose terms and history evidenced a legislative intent to afford a power of removal free from the restraints of earlier tenure enactments. See also Cetrulo v. Byrne, 31 N.J. 320 (1960). The statute here involved (R.S. 58:14-1 et seq.) has a legislative history which is pointedly to the contrary. See Brickett v. Lagay, 134 N.J.L. 1, 6 (E. & A. 1946); DeVita v. Housing Authority of City of Paterson, supra, 17 N.J., at pages 358-359. Its original provisions for the appointment and removal of assistants at the pleasure of the Passaic Valley Sewerage Commissioners (L. 1902, c. 49, p. 196; L. 1903 (Sp. Sess.) c. 1, p. 779; R.S. 58:14-6) antedated the present Veterans' Tenure Act (N.J.S.A. 38:16-1). When, in 1945, a river inspector employed by the commissioners claimed tenure he was not met with any suggestion that the statute intended to afford a power of removal free from the restraints of any later tenure enactments but was met with the contention that he did not hold a position "under the government of this State, or the government of any county or municipality" and did not receive a salary from "such State, county or municipality" within the governing language of the Veterans' Tenure Act. See Brickett v. Lagay, 133 N.J.L. 155 (Sup. Ct. 1945). The Court of Errors and Appeals sustained this contention, embracing the strict view that the Passaic Valley Sewerage Commissioners were not part of the government of the State and that their subordinates did not hold positions under the government of the State (or any county or municipality) and did not receive their salaries from the State (or any county or municipality). See Brickett v. Lagay, 134 N.J.L. 1 (E. & A. 1946). However the Legislature passed a statute (L. 1945, c. 175; N.J.S.A. 38:23A-3) which now provides that veterans' tenure enactments shall extend to all *347 persons "engaged in the public service in any of its branches" and that no distinction shall be made by reason of the source of the public funds from which their salaries are paid. This enactment was specifically designed to obviate the contention sustained in the Brickett case and to validate the tenure claims of veterans (such as the plaintiff Miele here) who were indefinitely employed as river inspectors by the Passaic Valley Sewerage Commissioners. See DeVita v. Housing Authority of City of Paterson, supra.
The Law Division properly sustained the plaintiff's claim of tenure and ordered his reinstatement; pursuant to the order the defendants reinstated the plaintiff on February 19, 1959 and he has since been engaged in the performance of his duties as river inspector. The only remaining question is whether he is entitled to back pay from July 22, 1958, the date of his dismissal. The plaintiff contends that he was the holder of a position or employment rather than an office; this contention is not disputed by the defendants and seems consistent with the prior holdings in our State which have drawn somewhat obscure and rather unfortunate lines between offices, positions and employments. See Ross v. Board of Chosen Freeholders of Hudson County, supra; Hart v. City of Newark, 80 N.J.L. 600, 602 (Sup. Ct. 1910); Cavenaugh v. Board of Chosen Freeholders of Essex County, supra; Daily v. Board of Chosen Freeholders of Essex County, 58 N.J.L. 319, 322 (Sup. Ct. 1895); cf. Glasser, supra. There is little before us bearing on the nature of the plaintiff's duties although they were evidently ministerial and without any policy making or governing aspects. See Glasser, supra, 6 Rutgers L. Rev., at p. 505. He was first appointed on November 29, 1949 as a maintenance man at the salary of $48.28 per week; he performed his duties until November 7, 1950 when he was inducted into the armed forces; he was reappointed as a maintenance man at $61.75 per week on January 29, 1953; on January 20, 1956 he was promoted to meter man at $76 per week; on July 22, 1957 the defendants adopted a resolution *348 that the plaintiff be reclassified to river inspector in Grade 7, Step 4 at $91 per week; on December 9, 1957 the plaintiff was advanced to Grade 7, Step 5 at $100 per week; on July 1, 1958 the defendants adopted a resolution terminating the plaintiff's employment as of July 22, 1958. The statute contains no reference to river inspectors and no resolution specifying his duties has ever been brought to our attention. He is one of the employees and assistants whom the commissioners were empowered by R.S. 58:14-6 to employ in order to carry out the purposes of the statute and whose duties have been assigned by the commissioners. On the record before us he must be considered as the holder of a position or employment rather than the holder of an office. See Ross v. Board of Chosen Freeholders of Hudson County, supra; Hart v. City of Newark, supra.
Although the plaintiff seeks to rest his claim for back pay on N.J.S.A. 40:46-34 as well as on common-law principles, we consider that the cited statute is not applicable here. It relates exclusively to municipal officers and employees and admittedly the plaintiff is not within that classification. See De Marco v. Board of Chosen Freeholders of Bergen County, supra, 21 N.J., at pages 144-145; cf. D'Elia v. Jersey City, 57 N.J. Super. 466 (App. Div. 1959); Bianchi v. City of Newark, 53 N.J. Super. 66 (App. Div. 1958). In view of the clear history of L. 1945, c. 175 (N.J.S.A. 38:23A-3), its general terms cannot fairly be applied to extend the scope of N.J.S.A. 40:46-34 to persons employed by the Passaic Valley Sewerage Commissioners. See Miele v. McGuire, supra, 53 N.J. Super., at page 517; Brickett v. Lagay, supra; DeVita v. Housing Authority of City of Paterson, supra. However, there is force to the plaintiff's claim that, wholly apart from any statutory provisions, the plaintiff as the holder of a position or employment rather than an office is, on common-law principles, entitled to assert a claim for back pay for the period between his wrongful dismissal and his reinstatement. See Ross v. Board of Chosen Freeholders of Hudson County, supra; *349 Miller v. Board of Chosen Freeholders of Hudson County, 10 N.J. 398, 408 (1952); cf. Walklet v. Civil Service Commission of New Jersey, 114 N.J.L. 582, 585 (Sup. Ct. 1935); R.S. 11:15-6. In rejecting his claim, the Law Division erroneously relied on De Marco v. Board of Chosen Freeholders of Bergen County, supra, and Winne v. Bergen County, supra, which dealt exclusively with public officers and expressly referred (see 21 N.J., at pages 316-317) to the distinction made in Ross v. Board of Chosen Freeholders of Hudson County, supra, between offices on the one hand and positions and employments on the other hand.
In the De Marco case, a county detective had been under suspension pending his trial on an indictment charging him with willfully neglecting his duties; the indictment was never brought on for trial and was dismissed on the State's motion. The detective was reinstated but his claim for back pay was rejected under the common-law doctrine, long recognized in New Jersey, that a public officer's right to compensation grows out of the rendition of the services of his office (Mayor, etc., of City of Hoboken v. Gear, 27 N.J.L. 265, 279 (Sup. Ct. 1859); Stuhr v. Curran, 44 N.J.L. 181, 191 (E. & A. 1882)) and that, absent express legislative authority, a public officer who does not actually render the services of his office may not receive the compensation therefor. See Hillel v. Borough of Edgewater, 106 N.J.L. 481, 483 (E. & A. 1930). In Winne v. Bergen County, supra, the court held that a county prosecutor could not recover back pay for the period he was under suspension pending trial on an indictment for misconduct which ultimately resulted in his acquittal; here again the court applied the common-law doctrine, rejecting a suggestion that the earlier common-law cases had dealt with positions and employments rather than offices and pointing out that, contrariwise, the Court of Errors and Appeals, in Ross v. Board of Chosen Freeholders of Hudson County, supra, had taken the position that they dealt solely *350 with public offices and had no relation to positions and employments (21 N.J., at page 317).
In the Ross case, a guard in the Hudson county jail was wrongfully dismissed and was thereafter reinstated. He sued for back pay and the trial court rejected his claim under the authority of the common-law cases. This was reversed by the Court of Errors and Appeals which pointed out that the jail guard held a position rather than an office and that the common-law doctrine was confined strictly to office holders. Since the question as to the amount of back pay due to the jail guard had not been passed upon in the trial court, the Court of Errors and Appeals remanded the proceeding with the comment that "the case must be retried upon the unlawful discharge theory under the rules as to the measure and mitigation of damages appropriate to that branch of the law of contracts." Cf. Moore v. Borough of Pitman, 109 N.J.L. 225, 227 (E. & A. 1932); Roselle v. La Fera Contracting Co., 18 N.J. Super. 19, 27 (Ch. 1952). Elsewhere in the country, courts have similarly recognized that a public employee's claim for back pay may justly be subjected to mitigation in the amount the employee actually earned or could have earned. See State ex rel. Wilcox v. Woldman, 157 Ohio St. 264, 105 N.E.2d 44, 47 (Sup. Ct. 1952):
"But no matter whether public employment is treated as ex contractu or ex lege, most of the cases declare that a public employee, even though he holds his position under civil service, is subject to the rule that earnings either actual or which he had the opportunity to receive during the period of wrongful exclusion from public employment should be allowed as an offset against the amount of compensation claimed on account of such wrongful exclusion. See Stockton v. Department of Employment, 25 Cal.2d 264, 153 P.2d 741; Corfman v. McDevitt, Civil Service Comm., 111 Colo. 437, 142 P.2d 383, 150 A.L.R. 97; Kelly v. Chicago Park Dist., 409 Ill. 91, 98 N.E.2d 738; Spurck v. Civil Service Board, 231 Minn. 183, 42 N.W.2d 720; annotation, 150 A.L.R., 113 et seq.; 10 American Jurisprudence (1951 Cumulative Supplement, 101, Section 17)." *351 See also Spurck v. Civil Service Board, 231 Minn. 183, 42 N.W.2d 720, 725 (Sup. Ct. 1950); Stockton v. Department of Employment, 25 Cal. (2d) 264, 153 P.2d 741, 746 (Sup. Ct. 1944); Annotation, Earnings or opportunity of earning from other sources as reducing claim of public officer or employee wrongfully excluded from his office or position, 150 A.L.R. 100, 110 (1944).
Many states have enacted comprehensive statutes which apply the principles of the Ross case to all public employees including office holders as well as the holders of positions and employments. This simple and uniform approach seems eminently just and workable and in the De Marco case we made the suggestion, which we now renew, that comparable legislation be considered for our State. See 21 N.J., at page 147. On April 9, 1956 Senator Shershin introduced a bill (S206) which was designed to provide for the allowance of back pay to all public employees including the holders of state, county and municipal offices and positions. Although the bill passed the Senate and Assembly, it was vetoed on September 17, 1956 by Governor Meyner who pointed out that, inter alia, it failed to provide for mitigation where there had been fair opportunity to engage in gainful private employment. On February 10, 1958 and again on February 16, 1959 Assemblyman Kraus introduced bills (A174  1958; A479  1959) which sought to bring state and county officers and employees within the scope of N.J.S.A. 40:46-34 which now is confined to back pay allowances to municipal officers and employees who have been illegally dismissed or suspended. These bills contained no express provision for mitigation and never became law. Cf. A292  1958. In D'Elia v. Jersey City, supra, the Appellate Division recently held that back pay claims under N.J.S.A. 40:46-34 by municipal officers and employees are not subject to mitigation but the issue has never been presented to this court and we express no opinion thereon.
*352 We are satisfied that the plaintiff's claim for back pay is justly governed by the principles of the Ross case and that the cause must be remanded to the Law Division for the allowance of back pay less any sum which the plaintiff actually earned or could have earned between his dismissal and reinstatement. The Law Division will give due consideration to the plaintiff's contention, which was not met by the defendants in this court, that he is also entitled to the benefit of the normal increments he would have received during the period of his wrongful discharge as well as to interest on his recovery of back pay. Cf. Spurck v. Civil Service Board, supra, 42 N.W.2d, at page 728 with State ex rel. Anderson v. Walker, 233 La. 687, 98 So.2d 153, 154 (Sup. Ct. 1957); cf. Langham v. Reconstruction Finance Corp., 107 F. Supp. 482, 484 (D.C.D. Tenn. 1952), affirmed 208 F.2d 556 (6 Cir. 1953) with Green v. United States, 109 F. Supp. 720, 722, 124 Ct. Cl. 186 (Ct. Cl. 1953). See City of Covington v. Crolley, 306 Ky. 252, 206 S.W.2d 933, 935 (Ct. App. 1947). The judgment of the Law Division is:
Modified and the cause is remanded for further proceedings in conformity with this opinion.
For modification  Chief Justice WEINTRAUB, and Justices JACOBS, FRANCIS, PROCTOR, HALL and SCHETTINO  6.
Opposed  None.